JACOBS, APPELLEE, *v.* MUTUAL MORTGAGE & INVESTMENT CO., APPELLANT.

(No. 27051—Decided April 1, 1965.)

2

*Messrs. Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson,* for appellee.

*Messrs. Arter, Hadden, Wykoff & Van Duzer,* for appellant.

KOVACHY, P. J.   This cause is an appeal on questions of law from a judgment entered for the plaintiff in the sum of $10,500 in the Court of Common Pleas of Cuyahoga County for personal injuries.

Plaintiff, appellee herein, Beatrice Jacobs, hereinafter referred to as plaintiff, lived as a tenant in an apartment house located at 13660 Fairhill Road in the city of Shaker Heights. In her action in tort she claims to have fallen over a torn carpet as she stepped out of the elevator into a common corridor of the second floor of the apartment house building.   The defendant, appellant herein, Mutual Mortgage & Investment Company, a corporation, hereinafter referred to as company, operated this apartment building under a written "Property Management Agreement" with the owner, The Fairhill Company. The agreement opens with the statement that the owner gives the company, "as its agent * * * the exclusive management and control * * *," of the property for a period of three years. Under its terms the company has the power and authority, *inter alia,* to advertise, select tenants, and rent all or any part of the premises; make and execute leases; collect the rents; prosecute all legal proceedings for the recovery of possession of these premises and/or rentals due therefor and settle claims and disputes arising therefrom; make ordinary repairs as may in its discretion be necessary or proper, with approval of the owner required for the permanent replacements and improvements in excess of $500; hire, manage and pay and discharge all managers, janitors and other employees; and purchase all supplies and pay all bills.

The agreement provides further, *inter alia,* that all expenses incurred by company shall be charged to the account of the owner with no profit added; all persons employed are agents and employees of the owner and not subagents of the company; the company shall not be required to perform any act or duty involving expenditure of money unless sufficient funds are at

hand, and, if funds be insufficient, the owner agrees to supply the sum necessary, and the company may in its discretion make advances; it shall not be incumbent upon the company to institute any legal proceedings unless requested in writing by the owner; no provision in the agreement shall be construed as a guarantee of this performance by the company, but compliance shall be fully met by the exercise of reasonable diligence; the owner agrees to carry public liability insurance containing a clause protecting the company; the owner will indemnify the company for expenses incurred or loss suffered as to any claim or action in connection with the property; the company furnishes its services for a commission of 2 per cent of the gross amount of rentals collected; the company renders a monthly statement of receipts and disbursements and remits the net balance to the owner, and, if a deficit be shown, the owner will remit the same immediately upon receipt of such statement; and the agreement may be terminated by the owner upon a sale of the property or by giving the company a ninety-day notice.

The first two assignments of error by the company are as follows:

1. The trial court erred in overruling the company's motion for a directed verdict at the close of all the evidence;

2. The trial court erred in overruling the company's motion for judgment notwithstanding the verdict.

The company contends that the bill of exceptions discloses no evidence from which a jury could have found that it owed plaintiff any duty respecting the condition of the premises, for the reason that under the "Property Management Agreement" it was simply an agent of the owner and authorized to act for the owner in certain limited areas and, not having complete possession or control of the premises, owed no obligation or duty to the plaintiff to maintain areas common to all in the building in a reasonably safe condition.

The plaintiff, on the other hand, maintains that sufficient evidence was presented to the jury from which it could find that the company owed plaintiff a duty with respect to the condition of the premises because under the management agreement the company was either an independent contractor or an agent of the owner and that either of these relationships made

the company liable to the plaintiff for injuries resulting from negligence in maintaining the apartment building.

It is well settled law in Ohio that an owner of property who has possession or control of a building is liable to persons injured as a result of negligence on his part in not keeping and maintaining the premises in a reasonably safe condition. *Burdick* v. *Cheadle,* 26 Ohio St. 393; *Shindelbeck* v. *Moon,* 32 Ohio St. 264; *Stackhouse* v. *Close,* 83 Ohio St. 339; *Marqua* v. *Martin,* 109 Ohio St. 56; *Berkowitz* v. *Winston,* 128 Ohio St. 611; *Ripple* v. *Mahoning National Bank,* 143 Ohio St. 614; *Brown* v. *Cleveland Baseball Company,* 158 Ohio St. 1; and *Pitts* v. *Cincinnati Metropolitan Housing Authority,* 160 Ohio St. 129.

The question before us as to each of these assignments of error is whether the company under the "Property Management Agreement" is given such complete and exclusive control of the management and operation of the building as to stand in the shoes of the owner. If it is given such control, it necessarily follows that the company would be liable to the plaintiff for negligence in failing to maintain the carpet in the common corridor in a reasonably safe condition.

Under the agreement the owner retains the control over all legal proceedings, claims, and disputes involving the property except legal proceedings necessary for the recovery of possession of leased premises; over the permanent replacements and improvements costing in excess of $500; over accounts as to all expenses without profits added; ultimately over employees and agents; over public liability insurance with a clause protecting the company; over the net balance shown by monthly statements of receipts and disbursements; over deficits; and over the termination of the "Property Management Agreement."

It seems patent to us, therefore, that in the light of the owner retaining certain important attributes of control over its property to the exclusion of the company and conferring only limited and circumscribed powers and authority upon the company to manage and operate its property, the opening statement in the "Property Management Agreement" that the company is given "the exclusive management and control of the property" loses significance.

Plaintiff contends that, inasmuch as the company had the authority to make ordinary repairs to the extent of $500, its failure to exercise such authority to repair the carpet constituted an act of negligence and made it liable to her. She, apparently, does not realize that the requirement by the company to repair the carpet came by virtue of a contract with the owner under which it operated the apartment building and that such duty to repair was owed to the owner alone and not to any third party. Such dereliction, under the law, was an act of nonfeasance and not of misfeasance or positive wrong.

The law of Ohio provides that an agent is as liable as his principal to third persons for acts of omission or commission performed within the scope of the agent's authority where injury results to a third person because of the active negligence and wrongdoing of the agent but that an agent is only liable to his principal for the nonperformance of a duty owing to his principal where such act is one of nonfeasance alone. In the case of *Henshaw* v. *Noble,* 7 Ohio St. 226, the Supreme Court, through Scott, J., stated the following at page 232:

"We understand the law in regard to the liability of the principal and the agent, to third persons, for torts occurring in the course of the agency to be this: The principal is always liable to third persons for the misfeasances, negligences, and omissions of duty of his agent, in all cases within the scope of his agency. The agent is also personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general, liable to third persons for his own nonfeasances or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal, there being no privity between him and such third persons; the privity exists only between him and his principal. * * *"

Plaintiff's contention, consequently, has not been maintained under the facts of this case.

See 2 Ohio Jurisprudence 2d 208, Section 144, "Distinctions based on Acts of Malfeasance, Misfeasance and Nonfeasance."

In a case in the state of New York, *Gardner* v. *1111 Corp.,* 286 App. Div. 110, 141 N. Y. S. 2d 552, with virtually identical facts as in the instant case, the Supreme Court Appellate Divi-

sion held the following as set out in paragraph two of the N. Y. S. 2d headnotes:

"A managing agent who is not in complete control of management and operation of building it not liable for nonfeasance."

That case was affirmed by the New York State Court of Appeals in 1 N. Y. 2d 758, 135 N. E. 2d 55. Also, see *Greco* v. *Levy,* 257 App. Div. 209, 12 N. Y. S. 2d 470, affirmed by the New York Court of Appeals in 282 N. Y. 575, 24 N. E. 2d 989.

We conclude that the company as a matter of law was not in complete and exclusive control of the property and as a result was not liable to the plaintiff for failure to maintain the carpet in the corridor in a reasonably safe condition, and that the owner, having reserved some control over the property, owed the ultimate duty to the plaintiff to inspect and repair the carpet and was alone responsible for negligence in that respect and liable to the plaintiff for injuries suffered by her because of such negligence. Accordingly, the trial court was in error in not granting judgment for the defendant at the close of all the evidence and was also in error in not granting the motion notwithstanding the verdict filed subsequent to the rendering of judgment.

The judgment is reversed as contrary to law, and final judgment is rendered for the defendant.

*Judgment reversed.*

CORRIGAN and WASSERMAN, JJ., concur.