KIRCHNER, Admr., Appellant,

v.

SHOOTERS ON THE WATER, INC. et al., Appellees.

[Cite as *Kirchner v. Shooters on the Water, Inc.*, 167 Ohio App.3d 708, 2006-Ohio-3583.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86919.

Decided July 13, 2006.

710

Paul W. Flowers Co., L.P.A., and Paul W. Flowers; and Leon M. Plevin, for appellant.

Jeffrey M. Elzeer; Taft, Stettinius & Hollister, L.L.P., and Mark J. Valponi, for appellees Shooters on the Water, Inc. and Roger Loecy.

Davis & Young Co., L.P.A., and George W. Lutjen, for appellees Gabrielle, Michael, and Judith Miller.

Reminger & Reminger Co., L.P.A., and Andrew A. Kabat, for appellee Proactive Security Services, Inc.

Dennis R. Spirgen, for appellee Sugar Warehouse Ltd. Partnership.

MARY EILEEN KILBANE, Judge.

{¶ 1} Paul M. Kirchner, administrator of the estate of Paul C. Kirchner, appeals the trial court's decision granting summary judgment in favor of defendants-appellees. Paul M. Kirchner ("plaintiff") argues that the trial court erred in granting summary judgment because genuine issues of material fact remained to be litigated against each of defendants-appellees. For the following reasons, we affirm the decision of the trial court.

{¶ 2} This appeal arises out of the drowning death of plaintiff Paul M. Kirchner's son, Paul C. Kirchner ("Kirchner"), in the Cuyahoga River on August 6, 2000. The incident occurred at approximately 2:15 a.m., next to the premises of Shooters on the Water ("Shooters"). Kirchner was 20 years old at the time of his death.

{¶ 3} Prior to arriving at Shooters on the night of August 5, 2000, Kirchner and his friends Charles Homolka and Aaron Gibson attended a Hawaiian luau party at the home of defendants Gabrielle, Michael, and Judith Miller in Wickliffe, Ohio. Michael and Judith Miller are the parents of Gabrielle, who had invited approximately 40 to 50 of her friends to the party. Kirchner and his friends remained at the party for several hours drinking beer and vodka Jell–O shots.

{¶ 4} While at the party, Kirchner and his friends decided to go to Shooters. Kirchner, Homolka, and Gibson left the party and drove to Shooters at approximately 1:15 a.m.

{¶ 5} Shooters is a restaurant/bar located on the west bank of the Flats in downtown Cleveland, Ohio. Shooters leased the premises from defendant Sugar Warehouse Limited Partnership. At all relevant times to this action, defendant Roger Loecy owned Shooters. At the time of the incident, defendant Proactive Security Services provided security services for Shooters.

{¶ 6} When the young men arrived at Shooters, they walked to the back entrance of Shooters, where they encountered other friends. The group went to the back entrance because they believed they had a better chance of getting into the bar since numerous members of their group, including Kirchner, were under the legal drinking age. The entire group managed to gain entry into Shooters despite their underage status.

{¶ 7} Kirchner was at Shooters for approximately one hour prior to the incident. According to his friends, Kirchner drank beer, mixed drinks, and shots. At approximately 2:15 a.m., Kirchner and his friends made plans to leave Shooters. However, Kirchner told his friends that he was going to urinate off the dock of Shooters, into the Cuyahoga River. Kirchner's friends and Dave Schuster, an off-duty Cleveland firefighter, observed Kirchner walk to the end of

the dock, lean against a pole, and begin urinating. Shortly thereafter, Kirchner fell into the river. Kirchner's friends ran to the end of the dock and after seeing no sign of their friend, jumped in after him. The U.S. Coast Guard arrived and eventually recovered Kirchner's body from the river. He was pronounced dead at 4:40 a.m. The coroner's toxicology report indicated that Kirchner had a blood alcohol level of .24, which is three times the legal limit for operating a motor vehicle in Ohio.

{¶ 8} On July 11, 2001, plaintiff filed this wrongful death action against Shooters, Loecy, Proactive, Sugar Warehouse, and the Millers. Plaintiff later voluntarily dismissed the initial suit. He then refiled the lawsuit on January 26, 2004, against the same defendants. The lawsuit alleged that defendants negligently (1) permitted Kirchner to enter Shooters and purchase alcoholic beverages and (2) failed to provide adequate safety measures to protect patrons from the hazards of slipping and falling into the Cuyahoga River from an adjacent boardwalk.

{¶ 9} Plaintiff further clarified the claims in a later pleading where he claimed relief for (1) exposing business invitees to unacceptable dangers, (2) failing to provide necessary and appropriate security, and (3) serving alcohol to underage individuals. Additionally, plaintiff claims that Kirchner suffered conscious pain and suffering prior to his death and sought compensatory and punitive damages.

{¶ 10} Each defendant filed an answer denying liability and Shooters, Loecy, and Sugar Warehouse filed cross-claims. All defendants moved for summary judgment, and plaintiff opposed the requests in a consolidated memorandum. In an order dated August 10, 2005, the trial court granted summary judgment in favor of each defendant. Shooters, Loecy, and Sugar Warehouse voluntarily dismissed their pending cross-claims without prejudice.

{¶ 11} Plaintiff appeals the trial court's order, raising the three assignments of error contained in the appendix to this opinion.

{¶ 12} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534, citing *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and that

conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293, 662 N.E.2d 264.

{¶ 14} In his first assignment of error, plaintiff argues:

The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellees Shooters on the Water, Inc. and Sugar Warehouse Ltd., upon the claims of premises liability and Ohio Basic Building Code violations.

{¶ 15} In the complaint, plaintiff alleges that Shooters, Proactive Security, Sugar Warehouse, and Loecy "are negligent for failing to provide adequate safety measures to protect their patrons from the hazards of falling into the Cuyahoga River from their dock, inadequate lighting, failure to monitor the ingress and egress of patrons, * * * and as a result, plaintiff was caused to fall into said body of water, whereby drowning." However, in this appeal, plaintiff does not claim error with the trial court's grant of summary judgment in favor of defendants Loecy and Proactive Security on the claim of premises liability. Plaintiff's first assignment of error appeals only the grant of summary judgment in favor of Shooters and Sugar Warehouse on the claim of premises liability.

{¶ 16} In this assigned error, Shooters and Sugar Warehouse argue that plaintiff's claim of premises liability must be dismissed because any dangers Kirchner confronted on August 6, 2000, were open and obvious, and, therefore, neither Shooters nor Sugar Warehouse owed Kirchner any duty of care. Additionally, Sugar Warehouse submitted several other grounds upon which summary judgment could have been granted. In response, plaintiff argues that the trial court erred in granting summary judgment because genuine issues of material fact existed as to whether the dangers were open and obvious and whether defendants violated the Ohio Basic Building Code ("OBBC").

{¶ 17} It is well settled in Ohio that the elements of an ordinary negligence action between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) a resulting injury that is the proximate cause of the defendant's breach. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. The plaintiff has the burden of proof to establish

each of these elements by a preponderance of the evidence. Id. Whether a duty exists is a question of law for the court to decide. Id.

{¶ 18} "In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id.; *McManes v. Kor Group*, Montgomery App. No. 19550, 2003-Ohio-1763, 2003 WL 1795575, at ¶ 37. With regard to invitees, a landowner has a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition in order to insure that the invitee is not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474; *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 28 OBR 165, 502 N.E.2d 611. Although a business is not an insurer of its invitees' safety, it must warn them of latent or concealed dangers if it knows or has reason to know of the hidden dangers. *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 359, 12 O.O.3d 321, 390 N.E.2d 810. The Ohio Supreme Court has further explained:

[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use.

*Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 7 O.O.3d 130, 372 N.E.2d 335.

{¶ 19} However, under the "open and obvious" doctrine as established in Ohio, an occupier or owner of premises is under no duty to protect any person, including business invitees, against dangers that are so open and obvious that the "nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 80, 2003-Ohio-2573, 788 N.E.2d 1088, quoting *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504.

{¶ 20} Furthermore, a premises owner or occupier does not owe a higher standard of care to a person who has become voluntarily intoxicated on the property. *Gwin v. Phi Gamma Delta Fraternity* (Oct. 16, 1997), Cuyahoga App.

No. 71694, 1997 WL 638808; see, also, *Prest v. Delta Delta Delta Sorority* (1996), 115 Ohio App.3d 712, 686 N.E.2d 293. Both *Gwin* and *Prest* involved students who had become voluntarily intoxicated and fell to their deaths from the roofs of a fraternity or a sorority house. In each case, the parties claimed that the intoxicated condition of the students was a circumstance that acted to increase the fraternity's and sorority's duty of care to warn the students of the dangers of falling off of the roof.

{¶ 21} In *Gwin*, our Eighth District Court of Appeals held that "there is no higher standard of care imposed upon land-occupiers" in the case when a social guest or business invitee voluntarily becomes intoxicated.

{¶ 22} Similarly in *Prest*, the Tenth District Court of Appeals held:

[I]n the instant case, we are faced with a very ordinary appreciation, which is, a fall from a forty-foot roof will most likely result in injury or death. This is a fact which nearly every person can appreciate. What remains in the present case, however, is the fact that Prest was intoxicated * * *. One cannot, by means of voluntary intoxication or by custom, defeat the duty owed by owner or tenant of a premises to an invitee of an open and obvious danger. An open and obvious danger is just that, a danger which a reasonable person would appreciate on his own and avoid.

115 Ohio App.3d at 716, 686 N.E.2d 293.

{¶ 23} In the present case, Shooters and Sugar Warehouse have met their burden in demonstrating that there exists no genuine issue of material fact. The parties conceded that Kirchner was a business invitee and intoxicated at the time of his death. However, in their motions for summary judgment and in their appellate briefs, both defendants argue that the drop-off into the Cuyahoga River was an open and obvious condition that eliminated any duty owed to Kirchner. They point to evidence taken from Kirchner's friends, showing that Kirchner fell into the river while urinating off the dock of Shooters. Moreover, the defendants cite deposition testimony from Kirchner's friends that the drop-off from the dock was clearly visible and that patrons at Shooters knew about the drop-off into the river. Specifically, Homolka testified as follows:

Q: Did you know the river was a potential danger?

A: Yeah.

Q: And if you fell in, that would be dangerous?

A: Yes.

* * *

A: That is common sense.

* * *

Q: Do you know if Paul [Kirchner] knew the river was beyond the boardwalk?

A: I don't know.

Q: Did you tell him there was a river there?

A: No.

Q: Why not?

A: I am sure it was pretty obvious.

{¶ 24} Additionally, Amy Meczka, another friend of Kirchner's who was present at Shooters on August 6, 2000, testified as follows:

Q: And you could see the Cuyahoga River from where you were standing?

A: Yes.

Q: Could you see it clearly?

A: Yes.

Q: Did you know the river was there?

A: Yes.

* * *

Q: You knew to stay clear of that area [by the river]?

A: Yes.

Q: Did you know the river was a dangerous

* * * Objection

* * * place?

A: I am not * * *

Q: or a danger I should say?

A: Yes.

{¶ 25} Accordingly, Shooters and Sugar Warehouse have established that the dangers presented by the drop-off into the Cuyahoga River from the dock at Shooters were open and obvious. Such open and obvious dangers eliminate any duty owed to Kirchner.

{¶ 26} In response, plaintiff is unable to establish the existence of any genuine issue of material fact that would prevent the grant of summary judgment. Plaintiff argues that it was unclear whether the drop-off from the dock was well lit or whether the drop-off was concealed in any way. Plaintiff cites the deposition transcript of David Schuster, the off-duty Cleveland firefighter, in support of this argument. In his deposition, David Schuster stated that there was not enough light to see into the dirty water but that if Kirchner had come up for air, Schuster would have been able to see him because there were lights under the dock. This does not refute defendants Shooters' and Sugar Warehouse's evidence that the area was well lit and that the drop-off into the river was obvious and well known. Plaintiff merely made conclusory statements alleging that a

genuine issue of material fact exists as to whether the dock was well lit. As stated above, this is not enough to overcome a grant of summary judgment.

{¶ 27} Additionally, plaintiff argues that Shooters and Sugar Warehouse violated the OBBC. Specifically, plaintiff claims that on August 6, 2000, the structure of the dock outside Shooters violated various sections of the OBBC. Plaintiff claims that even though the city of Cleveland had exempted the Shooters dock from the provisions of the OBBC, the lack of a handrail qualifies as a "serious hazard," requiring Shooters to retrofit the dock to conform with the OBBC requirements. Plaintiff supports this argument with an affidavit from an architectural expert who opined that the lack of protection along the boardwalk at Shooters violated various sections of the OBBC. Plaintiff claims that this evidence created a genuine issue of material fact regarding defendants' duty and breach of duty. Plaintiff cites the cases of *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198, and *Francis v. Showcase Cinema Eastgate*, 155 Ohio App.3d 412, 2003-Ohio-6507, 801 N.E.2d 535, in support of this argument.

{¶ 28} In *Chambers,* the Ohio Supreme Court held that violations of the OBBC do not constitute negligence per se, but that such violations may be admissible as evidence of negligence. 82 Ohio St.3d at 568, 697 N.E.2d 198. *Francis* applied the holding of *Chambers* and concluded that in cases where there exists a violation of the OBBC, a defendant was precluded from asserting the "open and obvious" defense to eliminate the existence of any duty or breach of duty. *Francis* at ¶ 10

{¶ 29} We disagree with the *Francis* court's interpretation of *Chambers.* In *Olivier v. Leaf & Vine,* Miami App. No. 2004 CA 35, 2005-Ohio-1910, 2005 WL 937928, the Second District Court of Appeals analyzed *Chambers,* which did not address the "open and obvious" doctrine, and concluded:

> [T]he supreme court has implied that building code violations may be considered in light of the circumstances, including whether the condition was open and obvious to an invitee. The fact that a condition violates the building code may support the conclusions that the condition was dangerous and that the landowner had breached its duty to its invitee. However, such violations may be obvious and apparent to an invitee. In our judgment, if the violation were open and obvious, the open and obvious nature would "obviate the duty to warn."

*Olivier* at ¶ 28. See, also, *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088; *Ryan v. Guan,* Licking App. No. 2003CA00110, 2004-Ohio-4032, 2004 WL 1728519 (the "open and obvious" doctrine applied, despite the fact that the plaintiff had lost her balance on a curb ramp flare that was one and one-half times steeper than allowed by the applicable building codes); *Duncan v. Capitol S. Community Urban Redevelopment Corp.,*

Franklin App. No. 02AP–653, 2003-Ohio-1273, 2003 WL 1227586 (unreasonably high curb was an open and obvious danger); see, also, *Quinn v. Montgomery Cty. Edn. Serv. Ctr.*, Montgomery App. No. 20596, 2005-Ohio-808, 2005 WL 435214 ("open and obvious" doctrine applied to defect in the sidewalk, which municipality had a duty to maintain under R.C. 2744.02(B)(3)).

{¶ 30} Accordingly, we adopt the Second District's interpretation of *Chambers* and disregard *Francis*. We find that the "open and obvious" doctrine applies to the facts in this case, regardless of any alleged violations of the OBBC. Moreover, we have previously determined that the drop-off from Shooters into the Cuyahoga River was an open and obvious condition and that plaintiff failed to establish the existence of a genuine issue of material fact refuting this conclusion. Accordingly, viewing the facts in the light most favorable to the plaintiff, we must conclude that the trial court did not err when it granted summary judgment in favor of Shooters and Sugar Warehouse on plaintiff's claim of premises liability.

{¶ 31} Moreover, Sugar Warehouse raised the argument that it cannot be liable because Kirchner's fall from the edge of the boat dock at Shooters occurred on property not owned or controlled by Sugar Warehouse. In its motion for summary judgment, Sugar Warehouse points out that the edge of Shooters' dock lies over the Cuyahoga River, beyond the property line of Sugar Warehouse property. Moreover, Sugar Warehouse did not build or maintain the deck outside of Shooters. Accordingly, Sugar Warehouse did not have any ownership interest in the land where Kirchner's death took place. Therefore, plaintiff cannot maintain a cause of action against Sugar Warehouse in relation to land-ownership liability. Given this undisputed evidence, Sugar Warehouse owed no duty to Kirchner, and any claim against Sugar Warehouse was properly dismissed as a matter of law.

{¶ 32} Additionally, Sugar Warehouse is also entitled to summary judgment because as a landlord out of possession, Sugar Warehouse owed no duty to patrons of Shooters. A commercial landlord who is out of possession and control of property leased to a tenant is not liable to third parties for injuries caused by conditions on the property. *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149; *Pitts v. Cincinnati Metro. Hous. Auth.* (1953), 160 Ohio St. 129, 51 O.O. 51, 113 N.E.2d 869; *Ogle v. Kelly* (1993), 90 Ohio App.3d 392, 396, 629 N.E.2d 495. This common-law rule has been abrogated with respect to residential property by the enactment of various landlord-tenant statutes, but the rule remains in place with respect to commercial leases. Therefore, plaintiff cannot maintain a cause of action against Sugar Warehouse.

{¶ 33} Plaintiff's claims against Shooters and Sugar Warehouse were properly dismissed with prejudice as a matter of law.

{¶ 34} Plaintiff's first assignment of error is overruled.

{¶ 35} In its second assignment of error, plaintiff argues:

The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellee, Proactive Special Services Inc., upon the claim of inadequate security.

{¶ 36} In this assigned error, plaintiff argues that Proactive had a duty to provide appropriate security and that Proactive breached this duty by allowing Kirchner and other underage individuals to enter Shooters and purchase alcohol. Proactive argues that it owed no duty to Kirchner.

{¶ 37} Section 302 of the Restatement of the Law 2d, Contracts states:

Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.

{¶ 38} In *Norfolk & W. Co. v. United States* (C.A.6, 1980), 641 F.2d 1201, 1208, the United States Court of Appeals for the Sixth Circuit, applying Ohio law, explained the "intent to benefit" test, a test used to determine whether a third party is an intended or incidental beneficiary:

Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.

* * *

[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.

{¶ 39} Our Ohio Supreme Court adopted the "intent to benefit" test in *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780.

{¶ 40} At the time of Kirchner's death, Proactive had contracted with Shooters to provide security. The relevant terms of that contract effective on the date of the accident provided as follows:

GENERAL TERMS

PSSS [Proactive] will provide Premium Off–Duty Police Services (off-duty police) and Security officer services, as further defined below, to client at the property for the term of this contract.

{¶ 41} Even though the terms of the contract say that the services of the security officers will be further defined below, the contract provided by Proactive does not actually further define this term. Nonetheless, the deposition testimony from Forrest Petz, an employee of Proactive that worked at Shooters during this time period, and Kevin Callahan, the Operations Manager of Proactive, explain what services Proactive performed. Forrest Petz testified as follows:

Q: I'm sorry, when you were hired by Proactive, what did you understand your duties to be?

A: There were two kinds of jobs in security, sometimes you worked at one of the entrances and you checked ID's to make sure everybody coming in was 21 or over, and then the other job that you could have is you sort of roamed and kept an eye on things, and if you saw any kind of disturbances, a fight maybe, a problem with some of the bartenders with some of the customers, you just kind of settled it.

\* \* \*

Q: Okay. If you were a roamer would you also be looking for people that were in the bar that seemed like they were underage?

A: Yes, yes.

Q: How often would that happen?

A: Every night.

{¶ 42} Kevin Callahan testified as follows:

Q: Now, one of their [security guards'] other duties would have been to make sure that underage individuals did not get access to the bar; is that right?

A: They were—yes.

{¶ 43} Looking at the above evidence in the light most favorable to plaintiff, we cannot conclude that Kirchner was an intended beneficiary of the contract between Proactive and Shooters. Regardless of the fact that one of Proactive's duties was to check identification to ensure that anyone who entered Shooters was 21, Proactive did not enter into the contract with Shooters with the intention that underage individuals would benefit from its security services. Shooters has a well-established policy that no one under the age of 21 is allowed into the restaurant/bar after 9:00 p.m.

{¶ 44} We agree with the trial court that merely because Kirchner and his underage friends were able to gain access to Shooters while Proactive provided

security is irrelevant. The deposition testimony of the underage individuals present on August 6, 2000, offers numerous scenarios for how they were able to gain entry into Shooters. The scenarios are as follows: (1) the group entered through an interior hallway between Shooters and the adjacent bar, Jillians, (2) the group walked around the side of Shooters and entered a building that eventually led to the outside deck of Shooters, and (3) several members of the group used false identification to gain entry to Shooters. No matter which theory is to be believed, it is clear from the testimony that Kirchner and his friends used deceptive means to gain entry to Shooters on August 6, 2000.

{¶ 45} We cannot conclude that individuals who utilize such deceptive practices to avoid Shooters' legal-drinking-age policy are the intended beneficiaries of the contract between Shooters and Proactive. Accordingly, we find that no genuine issue of material fact exists and that the trial court properly granted summary judgment in favor of Proactive on plaintiff's claim of negligent security.

{¶ 46} The trial court properly dismissed plaintiff's claims against Proactive with prejudice as a matter of law.

{¶ 47} Plaintiff's second assignment of error is overruled.

{¶ 48} In its third assignment of error, plaintiff argues:

The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellees, Shooters on the Water, Inc., Michael G. Miller, Judith E. Miller, and Gabriel [sic] Miller, upon the claim of knowingly furnishing alcohol to an underage individual in violation of R.C. 4301.69(A) and 4301.22(A).

{¶ 49} In this assigned error, Shooters and the Millers argue that plaintiff has no basis for recovery because they are not liable for injuries or death to an adult who becomes voluntarily intoxicated when the voluntary intoxication is the proximate cause of the injury and death. Both Shooters and the Millers rely on the case of *Smith v. The 10th Inning Inc.* (1990), 49 Ohio St.3d 289, 551 N.E.2d 1296.

{¶ 50} In *Smith,* a bar patron sued the liquor permit holder after drinking intoxicating beverages, driving his vehicle, and getting into an accident that caused him property damage and personal injuries. The trial court dismissed the action and the court of appeals affirmed. In affirming the lower courts' rulings, the Ohio Supreme Court held:

[A]s a matter of public policy, an intoxicated patron has no cause of action against a liquor permit holder under R.C. 4301.22(B) where the injury, death or

property damage sustained by the intoxicated patron off the premises of the permit holder was proximately caused by the patron's own intoxication.

*Smith,* 49 Ohio St.3d at 292, 551 N.E.2d 1296.

{¶ 51} The court went on to find that an intoxicated patron "is not the type of 'innocent party' who was intended to be protected under R.C. 4301.22(B)." The court then stated the following:

[A]n adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior and resulting voluntary actions. Clearly, permitting the intoxicated patron a cause of action in this context would simply send the wrong message to all our citizens, because such a message would essentially state that a patron who has purchased alcoholic beverages from a permit holder may drink such alcohol with unbridled, unfettered impunity and with full knowledge that the permit holder will be ultimately responsible for any harm caused by the patron's intoxication. In our opinion, such a message should never be countenanced by this court.

Id.

{¶ 52} Numerous Ohio courts have followed the Ohio Supreme Court's holding in *Smith.* See *Hosom v. Eastland Lanes, Inc.* (1991), 72 Ohio App.3d 599, 595 N.E.2d 534 (holding that derivative wrongful death claims brought by a deceased's spouse and children against a liquor permit holder were properly dismissed when the deceased died as a direct and proximate result of his own voluntary intoxication); *Fifer v. The Buffalo Cafe* (1991), 76 Ohio App.3d 297, 601 N.E.2d 601 (holding that an adult bar patron does not have a cause of action under R.C. 4399.18 for his or her own injuries that proximately resulted from his or her own intoxication because R.C. 4399.18 was designed to protect third parties from being injured by the intoxicated bar patron, not the intoxicated bar patron from injuring himself or herself); *Piatak v. Breege, Inc.* (Mar. 16, 1995), Cuyahoga App. No. 67892, 1995 WL 116964 (upholding *Smith* by concluding that an adult bar patron who voluntarily becomes intoxicated does not have a cause of action for his or her own injuries under R.C. 4301.22(B) when said injuries are proximately caused by his or her own intoxication); *Walker v. Capri Ents., Inc.* (1997), 125 Ohio App.3d 154, 707 N.E.2d 1201 (following *Smith* by concluding that the estate of an adult bar patron who died as direct and proximate result of his or her voluntary intoxication after being served alcoholic beverages by a liquor permit owner is precluded from recovery against the liquor permit owner under R.C. 4301.22(B)).

{¶ 53} In response to this line of cases, plaintiff cites to the case of *Lesnau v. Andate Ents., Inc.* (2001), 93 Ohio St.3d 467, 756 N.E.2d 97. However, this reliance is misplaced. *Lesnau* involved a lawsuit by an innocent, third-party

victim's estate against a liquor permit holder for serving alcohol to an underage individual who later caused a car accident that took the life of the third party. Accordingly, the facts of *Lesnau* do not represent the facts of the present case since the estate of the deceased, voluntarily intoxicated patron brought the instant lawsuit. Moreover, as discussed above, the Ohio Supreme Court in *Smith* clearly stated that the statutory law in Ohio was designed to compensate innocent third-party victims who are injured by the actions taken by a patron who voluntarily became intoxicated at the establishment of a liquor permit holder. *Smith* does not offer any relief to a patron against a liquor permit holder for injury or death *to the patron* that occurs as a proximate result of the patron's voluntary intoxication.

{¶ 54} The holding of *Smith* clearly applies to actions brought pursuant to R.C. 4399.18 and 4301.22. However, plaintiff brought this action for wrongful death and pain and suffering pursuant to R.C. Chapter 2125 and R.C. 2305.21 for the exclusive benefit of Kirchner's next of kin. Nonetheless, Ohio case law has established that the *Smith* holding applies to derivative claims, i.e., wrongful death, filed against a liquor permit holder in relation to the injuries or death of a patron whose injuries or death were proximately caused by the patron becoming voluntarily intoxicated at the liquor permit holder's establishment. *Hosom*, 72 Ohio App.3d 599, 595 N.E.2d 534.

{¶ 55} In *Hosom*, a surviving husband of the deceased patron brought an action pursuant to R.C. 2125.01 through 2125.03 for the benefit of the decedent's next of kin. In upholding the trial court's dismissal of the complaint, the Tenth District held as follows:

> In the situation where the intoxicated patron dies, the only causes of action which exist are derivative in nature. Since R.C. 2125.02(A)(1) requires that an action for wrongful death be brought in the name of the decedent's personal representative for the exclusive benefit of the surviving spouse and children, it only makes sense that the mention of death in the *Smith* holding would preclude any causes of action which were of a derivative nature resulting from the death of the intoxicated person. Thus, in interpreting the holding of *Smith*, the trial court properly dismissed the derivative claims filed by the administrator of the decedent's estate, Stephen Hosom.

Id. at 603, 595 N.E.2d 534.

{¶ 56} Accordingly, we find that the ruling in *Smith* applies to plaintiff's derivative claim for wrongful death and survivorship.

{¶ 57} We must next determine whether the holding of *Smith* applies to individuals who are under the legal drinking age of 21 but over the age of majority, 18. The Ohio Supreme Court's decision in *Klever v. Canton Sachsen-*

*heim, Inc.* (1999), 86 Ohio St.3d 419, 715 N.E.2d 536, reveals that *Smith* does apply in this situation. In *Klever,* the intoxicated bar patron was of the age of majority but underage for the purpose of buying alcohol. After driving home from the drinking establishment, the patron was killed in a single-car accident. On appeal, the Ohio Supreme Court held:

> An underage adult who is served alcohol by a liquor permit holder is legally indistinguishable from the adult in *Smith* and may not maintain a cause of action against the liquor permit holder. Both the statutory text and case precedent support our conclusion that Ohio's Dramshop act does not provide an intoxicated, underage adult with a cause of action against a liquor permit holder for self-inflicted injuries.

Id. at 420, 715 N.E.2d 536.

{¶ 58} The court further explained:

> [A bar patron] cannot be said to have suffered death as a result of the actions of an intoxicated person and, therefore, [the patron's mother] cannot be the administrator of a person who suffered death as a result of the actions of an intoxicated person. She is, rather, the administrator of a person who suffered death as a result of *his own actions.* The statute simply cannot be construed as providing a cause of action to the "intoxicated person" himself, and thus, it cannot provide a derivative cause of action to his legal representative.

(Emphasis sic.) Id. at 427, 715 N.E.2d 536. See, also, *Lee v. Peabody's, Inc.* (June 9, 1994), Cuyahoga App. No. 65090, 1994 WL 258640; *Cole v. Broomsticks, Inc.* (1995), 107 Ohio App.3d 573, 669 N.E.2d 253; *Lemaster v. Davis* (Apr. 10, 1996), Lawrence App. No. 95 CA 30, 1996 WL 174627; *Steed II v. Chances Entertainment, Inc.* (July 25, 1996), Muskingum App. No. CT95–0030, 1996 WL 488850 (all holding that intoxicated, underage adults do not have a cause of action against a liquor permit holder for injuries or death the proximate cause of which was their own voluntary intoxication).

{¶ 59} Accordingly, we find that *Smith* applies to the instant lawsuit, in which Kirchner was under the legal drinking age but over the age of majority.

■ {¶ 60} Because Kirchner's death occurred while he was on the premises of Shooters, we must next determine whether the holding of *Smith* applies when the injury or death occurs on the premises. Once again, Ohio case law has established that it does not matter whether the injury, death, or property damage occurs on or off the permit owner's premises in determining whether the *Smith* rule applies. In *Fifer,* the Sixth District Court of Appeals held that "[w]e believe that for the public policy reasons stated in *Smith,* the intoxicated patron has no

cause of action under R.C. 4301.22, regardless of where the injury occurred." *Fifer,* 76 Ohio App.3d at 300, 601 N.E.2d 601.

{¶ 61} Similarly, in *Monateri v. Polito* (Dec. 18, 1992), Lake App. No. 92–L–088, 1992 WL 387363, the Eleventh District held that the decedent's estate was barred from recovery pursuant to *Smith* even though the death occurred on the premises of the liquor permit holder.

> While the cause of action in *Smith* arose prior to the enactment of R.C. 4399.18, and the injury occurred off of the permit holder's premises, we conclude that there is strong public policy against allowing a patron to recover for harm caused to himself or herself due to his or her own overindulgence whether on or off the premises * * *.

{¶ 62} Accordingly, we find that the *Smith* rule applies to the instant lawsuit even though the fatality occurred on Shooters' premises.

{¶ 63} Finally, we must determine whether the holding of *Smith* applies to social hosts. Plaintiff argues that because the Millers are not liquor permit holders, the law does not offer them any protection. We disagree.

{¶ 64} The Millers cite *Gwin v. Phi Gamma Delta Fraternity* (Oct. 16, 1997), Cuyahoga App. No. 71694, 1997 WL 638808. In *Gwin,* a 19–year–old student visited a fraternity house at Case Western Reserve University, became intoxicated and fell from the roof of the fraternity house, and subsequently died. The estate of the decedent sued the fraternity house alleging that they, as social hosts, furnished the decedent with alcoholic beverages and thus violated R.C. 4301.69. This appellate court disagreed and relied on *Smith* and *Lee,* supra, to affirm the trial court's grant of summary judgment.

> In *Lee v. Peabody's, Inc.* (June 9, 1994), Cuyahoga App. No. 65090 [1994 WL 258640], unreported, we determined that the holding of *Smith, supra,* prohibiting a patron from suing a permit holder for his own injuries proximately caused by his own intoxication, was applicable to an adult who was still underage within the meaning of R.C. 4301.69. Accordingly, an adult cannot sue a permit holder for injuries proximately caused by his own intoxication.
>
> Although the Fraternity appellees are not permit holders, we believe that the reasoning applicable in *Lee* is applicable *for social hosts furnishing alcohol to adults, even though underage for the purposes of R.C. 4301.69.* We find that the Fraternity appellees are not liable for injuries Gwin, an adult, suffered due to his own intoxication.

(Citations omitted and emphasis added.)

{¶ 65} Therefore, based on *Gwin* and the public policy rationale pronounced in *Smith,* we find that the *Smith* holding applies to the Millers as social hosts.

{¶ 66} As a result of the above-mentioned case law, *Smith* applies to the facts of this appeal. Moreover, we also conclude that neither Shooters nor the Millers owed Kirchner any duty with regard to plaintiff's claim of serving alcohol to underage individuals. The deposition testimony of Kirchner's friends shows that Kirchner attended the luau party at the Millers and then went to Shooters on August 5, 2000. While at both places, Kirchner, of his own volition, drank large quantities of alcohol. The toxicology report showed that at the time of Kirchner's death, his blood alcohol level was .24, nearly three times the legal limit for operating a motor vehicle in Ohio. Accordingly, we find that Kirchner patronized both the Millers and Shooters and became voluntarily intoxicated.

{¶ 67} We also find that Kirchner's death was directly and proximately caused by his voluntary intoxication. The evidence demonstrates that after drinking large quantities of alcohol, Kirchner walked to the end of the dock with the express purpose of urinating into the Cuyahoga River. The evidence also shows that Kirchner simply fell into the river. No evidence was presented to suggest that Kirchner slipped as a result of a foreign object or the condition on the sidewalk dock.

{¶ 68} Therefore, the Millers and Shooters have established that no genuine issue of material fact exists because Kirchner's death was caused by his own voluntary intoxication. Therefore, they have met their burden in moving for summary judgment.

{¶ 69} In response, plaintiff is unable meet his reciprocal burden of proving that a genuine issue of material fact remains to be tried. Plaintiff argues that R.C. 4301.22 and 4301.69 prohibit alcohol from being sold or served to individuals under the age of 21. Plaintiff claims that, because Kirchner was under the legal drinking age during the time he consumed alcoholic beverages at the Millers and Shooters, defendants should be liable for Kirchner's death. Plaintiffs cite *Lesnau*, 93 Ohio St.3d 467, 756 N.E.2d 97, in support of this argument. However, as stated above, *Lesnau* involved an action brought on behalf of an innocent third party against a liquor permit holder who negligently furnished alcohol to an underage patron. That is not the situation in the present case. Moreover, plaintiff has not provided this court with authority that stands for the proposition that the *Smith* line of cases does not apply when social hosts and liquor permit holders provide alcohol to an underage patron without their first verifying his age.

{¶ 70} Finally, plaintiff also argues that because the fatality occurred on the premises of Shooters that only the first sentence of R.C. 4399.18 is applicable to plaintiff's claims. However, as we stated above, the holding of *Smith* applies to prevent a cause of action brought by an intoxicated patron no matter where the

injury occurred. *Smith,* 49 Ohio St.3d 289, 551 N.E.2d 1296; *Fifer,* 76 Ohio App.3d at 300, 601 N.E.2d 601.

{¶ 71} Accordingly, viewing the evidence in the light most favorable to the plaintiff, we conclude that a patron or social guest that has become voluntarily intoxicated is not the type of innocent third party that the Dram Shop laws were designed to protect. Therefore, we must affirm the grant of summary judgment in favor of Shooters, Loecy, and the Millers as no genuine issue of material fact exists.

{¶ 72} Plaintiff's claims against Shooters, Loecy, and the Millers were properly dismissed with prejudice as a matter of law.

{¶ 73} Plaintiff's third and final assignment of error is overruled.

{¶ 74} Because plaintiff failed to appeal the dismissal of his claims for pain and suffering, this court will not address the trial court's ruling.

Judgment affirmed.

KARPINSKI, P.J., and CORRIGAN, J., concur.

Appendix A

Assignments of Error:

"I.   The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellees Shooters on the Water, Inc. and Sugar Warehouse Ltd., upon the claims of premises liability and Ohio Basic Building Code violations.

II.   The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellee Proactive Special Security Services, Inc., upon the claim of inadequate security.

III.   The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellees, Shooters on the Water, Inc., Michael G. Miller, Judith E. Miller, and Gabriel [sic] Miller, upon the claim of knowingly furnishing alcohol to an underage individual in violation of R.C. 4301.69(A) and 4301.22(A)."