DYNOWSKI, Appellee,

v.

CITY OF SOLON et al., Appellants.

[Cite as *Dynowski v. Solon,* 183 Ohio App.3d 364, 2009-Ohio-3297.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92264.

Decided July 2, 2009.

Stephen E. Bloom, for appellee.

Rademaker, Matty, McClelland & Greve, Shana A. Samson, David J. Matty, and Robert C. McClelland, for appellants.

MARY EILEEN KILBANE, Judge.

{¶ 1} The city of Solon ("appellant" or "the city") appeals the trial court's denial of its motion for summary judgment in a slip and fall that occurred at its municipal golf course. In its brief, appellant argues that the danger was open and obvious and that it is immune as a political subdivision under R.C. Chapter 2744. After reviewing the facts of the case and the pertinent law, we reverse.

{¶ 2} On September 23, 2006, Edmond Dynowski (appellee) slipped and fell while walking down a ramp constructed of railroad ties soaked in creosote. The ramp was located outside the pro shop on the grounds of Grantwood Golf Course ("Grantwood"), in Solon, Ohio. The golf course is owned and operated by the city of Solon. The ramp was designed and installed by Grantwood's superintendent, who is a city employee, approximately 15 years ago. Appellee suffered a left-wrist fracture in the fall.

{¶ 3} On June 20, 2007, appellee filed a negligence action against the city of Solon.

{¶ 4} On April 24, 2008, the city of Solon filed its motion for summary judgment.

{¶ 5} On September 24, 2008, the trial court denied the city's motion for summary judgment without opinion.

{¶ 6} The city appeals, asserting two assignments of error for our review.

{¶ 7} Assignment of error one

The trial court erred to the prejudice of the City of Solon and Grantwood Golf Course in not dismissing all claims against them on the grounds of Ohio Revised Code Chapter 2744, Political Subdivision Immunity.

{¶ 8} We note at the outset that R.C. 2744.02(C) gives appellate courts subject-matter jurisdiction to address the merits of a denial of summary judgment based upon immunity. See *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878. See also *Pearson v. Warrensville Hts. City Schools*, Cuyahoga App. No. 88527, 2008-Ohio-1102, 2008 WL 660856.

## Summary Judgment Standard of Review

{¶ 9} We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 10, 746 N.E.2d 618. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 192, 699 N.E.2d 534.

{¶ 10} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 11} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. If the movant fails to meet this burden, summary judgment is not appropriate. If the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293, 662 N.E.2d 264.

## Political Subdivision Immunity

{¶ 12} In its first assignment of error, the appellant argues that the trial court erred when denying its summary judgment motion because it claims that it was entitled to immunity as a matter of law.

Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred

in performing either a governmental function or proprietary function. The second tier requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. If any of the exceptions to immunity in R.C. 2744.02(B) apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Bounds v. Marc Glassman, Inc.*, Cuyahoga App. No. 90610, 2008-Ohio-5989[, 2008 WL 4951036], at ¶ 12, citing *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141.

{¶ 13} R.C. 2744.02(A)(1) states that political subdivisions are not liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to governmental functions of the political subdivisions. Governmental functions include the construction, renovation, maintenance, repair, and upkeep of golf courses. R.C. 2744.01(C)(2)(u)(v).

{¶ 14} There is no question in this case that appellant is a political subdivision for purposes of R.C. Chapter 2744. There is also no question that it was engaging in what the legislature expressly prescribes as a "governmental" function for purposes of the statute.[1] It is therefore afforded immunity under the first tier of the immunity analysis. However, under the second tier of the analysis, appellee contends that the immunity exception at R.C. 2744.02(B)(4) for injuries resulting from physical defects to property applies to this case. See also *Coats v. Columbus*, Franklin App. No. 06AP–681, 2007-Ohio-761, 2007 WL 549462.

### R.C. 2744.02(B)(4) Exception to Immunity

{¶ 15} R.C. 2744.02(B)(4) states:

[P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶ 16} Appellee maintains that Grantwood's superintendent designed and installed the ramp without complying with applicable building codes and then

---

1. R.C. 2744.01(C)(2)(u)(v) expressly includes the design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility, school auditorium, or gymnasium or any recreational area or facility, including a golf course.

negligently maintained it by covering the ramp surface with a nonskid material and a handrail on only one side of the ramp. In support of this, appellee relies on his deposition testimony and his expert report to support his position that the ramp was physically defective. At his deposition, appellee testified that he had been golfing at Grantwood twice a week for approximately 20 years and used the ramp about ten times a year prior to his fall. He further testified that the ramp was slippery when wet, that he noticed nothing unusual about the ramp on the date of injury, and that he could not recall if the ramp was wet on the date in question.

{¶ 17} In addition, appellee presented evidence that the ramp was negligently maintained because it was only partially covered with a nonskid surface. He showed that a handrail was installed on only one side of the ramp, the side with the nonskid surface, leaving the deteriorated exposed side without a handrail. Further, appellee presented evidence that a change in Grantwood's policy required golfers to wear rubber-soled "soft" spikes on the course, which made the ramp more slick. He presented evidence that the superintendent knew that patrons were falling on the ramp as a result of this policy, and that after a separate incident involving a fall, one golfer personally warned the superintendent that "someone was going to get seriously hurt." Following this admonition, workers at Grantwood installed a partial covering of astro turf over the slick areas. However, the area where appellee fell was not covered.

{¶ 18} Appellant argues, both in its summary judgment motion and on appeal, that the ramp was not physically defective; that the decision to design, install and maintain the ramp, and the manner in which these were done, was discretionary; and that it is entitled to statutory immunity unless it acted in a willful or wanton manner. Specifically, appellant argues that the "physical defect" exception found in the statute is inapplicable because the ramp at issue was not required to comply with local building codes and that, in any event, the condition of the ramp was open, obvious and admittedly well known by appellee. Under appellant's view, it is entitled to statutory immunity unless it acted in a willful or wanton manner. We agree.

{¶ 19} Appellee has failed to present sufficient evidence that would expose appellant to liability under the "physical defect" exception to immunity at R.C. 2744.02(B). While it has presented evidence that the ramp in question violated certain nonspecific building codes, it has presented no evidence that the ramp was required to comply with those codes to begin with. In short, appellant cannot be in violation of a law it is not required to follow. Since the "physical defect" exception found at R.C. 2744.02(B) of the statute does not apply, appellant is therefore immune from liability. We therefore need not reach the question of whether the third tier of the immunity analysis applies.

{¶ 20} However, even if the "physical defect" exception at R.C. 2744.02(B)(4) applied under the second tier, we find that the third tier of the immunity analysis would further protect appellant by virtue of its use of discretion regarding "policy-making, planning or enforcement of its duties and responsibilities" under the exceptions provided at R.C. 2744.03(A)(3). We also note that even if an exception to immunity under the second tier applied, appellant regains its immunity under subsection (A)(5) because appellee presented no evidence of wantonness, malice, recklessness, or ill will. Therefore, we find that appellant was immune from liability.

{¶ 21} For these reasons, appellant's first assignment of error is sustained.

## Open–and–Obvious Doctrine

{¶ 22} In the second assignment of error, appellant argues that appellee's claims were barred by the open-and-obvious doctrine. Even if immunity did not bar appellee's claims, the open-and-obvious doctrine bars them.

{¶ 23} Appellant's second assignment of error reads:

The trial court erred to the prejudice of the City of Solon and Grantwood Golf Course in not granting summary judgment in favor of Solon and Grantwood under the open and obvious doctrine as the presence and condition of the ramp was open and obvious.

{¶ 24} In premises-liability law, a business invitee is one who enters another's land by invitation for a purpose that is beneficial to the owner. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. A property owner owes an invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden defects. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. Invitees, however, have a duty in that they are expected to take reasonable precautions to avoid dangers that are patent or obvious. See *Brinkman v. Ross* (1993), 68 Ohio St.3d 82, 84, 623 N.E.2d 1175.

{¶ 25} Ohio courts consistently bar negligence claims where the allegedly dangerous condition is observable. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504; *Anderson v. Ruoff* (1995), 100 Ohio App.3d 601, 654 N.E.2d 449.

{¶ 26} The open-and-obvious doctrine provides that a premises owner owes no duty to persons entering those premises regarding dangers that are open and obvious. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, at paragraph one of the syllabus. The rationale underlying this doctrine is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons

entering the premises will discover those dangers and take appropriate measures to protect themselves." *Bentley Constr. Co.*, at 644, 597 N.E.2d 504.

{¶ 27} A business ordinarily owes its invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. *Paschal; Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 390 N.E.2d 810. When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. "[I]t is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." Id. at ¶ 13. The open-and-obvious doctrine satisfies the duty prong of a negligence claim. Id.

{¶ 28} When only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law. *Klauss v. Marc Glassman, Inc.*, Cuyahoga App. No. 84799, 2005-Ohio-1306, 2005 WL 678984. However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine. Id. at ¶ 18.

{¶ 29} In this case, appellant contends that appellee cannot create a genuine issue of material fact regarding whether the allegedly defective condition of the ramp was open and obvious, based upon his prior use of the ramp and his familiarity with the layout of Grantwood as a long-standing patron. Appellant also argues that appellee had knowledge of the condition of the ramp on this basis, having acknowledged in his deposition that he saw nothing wrong with the ramp and could not recall whether the ramp was wet on the date in question.

{¶ 30} Appellee counters that even if the danger is open and obvious, summary judgment is inappropriate in slip-and-fall cases where there are alleged building code violations. We disagree.

{¶ 31} First, as appellant points out, the ramp in question was not required to comply with building codes, as it was not a required means of ingress and egress. Second, Ohio law is clear that the open-and-obvious doctrine may be asserted as a defense to a claim of liability arising from a violation of the Ohio Basic Building Code. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120.

{¶ 32} In *Holly Hill*, the Supreme Court held that a building code violation does not provide an exception to the open-and-obvious doctrine in slip-and-fall cases. In so holding, the court reasoned:

Because administrative-rule violations do not create a per se finding of duty and breach of duty, the plaintiff must present evidence to establish those two prongs of the negligence test. While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the attendant duty of care by not rectifying the problem, the violation is mere evidence of negligence and does not raise an irrebuttable presumption of it. As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine. The plaintiff can avoid such defenses only with a per se finding of negligence, which we declined to extend to this context in *Chambers*.

Id. at ¶ 21, citing *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198.

{¶ 33} Thus, appellee's claim that the ramp violated certain nonspecific building codes is inapplicable.

{¶ 34} "Open and obvious hazards are those that are neither hidden or concealed from view nor nondiscoverable by ordinary inspection." *Terakedis v. Lin Family Ltd. Partnership*, Franklin App. No. 04AP–1172, 2005-Ohio-3985, 2005 WL 1840022, ¶ 10, citing *Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 566 N.E.2d 698. An owner or occupier of property owes no duty to warn invitees of open and obvious dangers on the property. *Sidle v. Humphrey*, 13 Ohio St.2d at 48, 42 O.O.2d 96, 233 N.E.2d 589. The rationale behind this doctrine is that the open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. *Bentley Constr. Co.*, 64 Ohio St.3d at 644, 597 N.E.2d 504; *Ruoff*, 100 Ohio App.3d at 604, 654 N.E.2d 449. This doctrine applies regardless of alleged violations of Ohio's Basic Building Code. *Kirchner v. Shooters on the Water, Inc.*, Cuyahoga App. No. 86919, 2006-Ohio-3583, 856 N.E.2d 1026.

{¶ 35} Here, the slope of the ramp, the lack of a handrail, and the slip-resistant material on only one side of the ramp are conditions readily apparent to anyone. As such, they cannot amount to a defect or hazard. See, e.g., *Kirchner*, id. In Ohio, negligence claims are barred under the open-and-obvious doctrine where the allegedly hazardous condition is readily observable. See *Ryan v. Guan*, Licking App. No. 2003CA00110, 2004-Ohio-4032, 2004 WL 1728519 (finding that the slope of a ramp, whether known or unknown, is not a hidden danger). See also *Terakedis*, supra (holding that the condition of slip-resistant material on a ramp is open and obvious). Further, Ohio law does not require that such conditions be actually observed by the claimant, only that they be observable. Id. at ¶ 10, stating that "[t]he dangerous condition at issue does

not actually have to be observed by the plaintiff in order for it to be an 'open and obvious' condition under the law. Rather, the determinative issue is whether the condition is observable." Thus, appellee cannot now contend, as he does in his brief, that the slope of the ramp was too steep, that there should have been a handrail on both sides of the ramp, and that a nonskid surface should have covered the entire ramp. All of these alleged hazards were readily observable upon observation. Because of the open and obvious nature of these alleged hazards, appellant owed no duty to warn appellee.

{¶ 36} Appellant's second assignment of error is sustained.

{¶ 37} Accordingly, the judgment is reversed, and the case is remanded for entry of summary judgment for the city.

Judgment accordingly.

GALLAGHER, P.J., concurs.

ROCCO, J., dissents.

KENNETH A. ROCCO, Judge, dissenting.

{¶ 38} I respectfully dissent from the majority opinion's disposition of this appeal. Appellee is not required by Civ.R. 56(C) to prove his case; he is required only to point out evidence in the record that demonstrates Solon is not entitled to summary judgment. When I view the evidence presented in this case in a light most favorable to the appellee, I see the existence of genuine issues of material fact.

{¶ 39} According to the evidence presented to the trial court, the city acquired the golf course in 1972. At that time, Gary Mazzeo was the general manager of the course, in charge of maintenance.

{¶ 40} In approximately 1991, Mazzeo decided that certain areas of the course needed updating for "safety" reasons, so he took it upon himself to replace the stairway from the clubhouse to the putting green. Without consulting any contractors, he and his employees installed railroad ties, placed lengthwise to form a ramp. He also had a handrail placed along one side.

{¶ 41} Since the ties initially had a rough surface, they did not create any problems. However, Mazzeo knew that the creosote imbedded in the wood was "oily." He also knew that over the years, the ties became smoother with wear.

{¶ 42} In approximately 1996, Mazzeo received a promotion to superintendent, in charge of "the whole operation." He was required to go to the board of trustees only for major projects.

{¶ 43} In approximately 2002, the trustees decided to open the driving range for use "year round." To ensure that during the winter months people would not slip on his ramp, which was by then over 11 years old, Mazzeo decided to install a roll of "astro turf."

{¶ 44} The roll, however, was not as wide as the ramp, so Mazzeo placed the material nearer to the handrail. Mazzeo knew that the ramp became somewhat slippery in damp conditions. He believed that most people who used the ramp walked single file, so each could hold onto the rail if the weather made the ramp wet. Mazzeo was aware that some of the users found the railroad ties he had installed slippery; he had been told by people that "they slipped on a railroad tie or something." Nevertheless, he did nothing about the matter.

{¶ 45} Three years later, in 2005, the trustees decided that metal spikes on golf shoes would be prohibited at the course; this type of spike did too much damage to the greens. They notified the regular patrons of this change.

{¶ 46} One of the regular patrons was Dynowski. He had been using the course for approximately 20 years, so he was familiar with the physical layout of the course. However, he only occasionally used the ramp.

{¶ 47} On September 23, 2006, Dynowski began walking down the ramp with a fellow golfer. Dynowski was next to his friend, on the outside and off of the astro turf strip. It was a cool and dewy morning. Dynowski slipped on the ramp and fractured his wrist as he attempted to break his fall.

{¶ 48} He subsequently instituted this action, asserting that his injury was proximately caused by Solon's negligence in failing "to prevent, remove and warn against hazards and defects" on the golf course. Solon subsequently filed its motion for summary judgment, arguing that it was entitled to sovereign immunity and the danger was "open and obvious." Necessarily, this indicated that Solon acknowledged the existence of a "danger."

{¶ 49} Solon's motion was supported by copies of Dynowski's and Mazzeo's deposition, together with the affidavit of its own chief building inspector, Jack Clifford. Clifford stated that since the ramp was not a "required means of egress, the requirements set forth in Ohio's Building Code do not apply" to it.

{¶ 50} Dynowski filed an opposition brief, in which he argued that issues of material fact existed concerning whether Solon was entitled to immunity under R.C. 2744.02(B)(4) and whether, if so, immunity was abrogated by R.C. 2744.03(A). He attached to his motion copies of additional deposition testimony to demonstrate that Mazzeo had been placed on notice of the dangerous conditions of the railroad ties, together with an expert's affidavit.

{¶ 51} Civil engineer and construction consultant Marko Vovk provided a copy of his curriculum vitae and photographs of the ramp. He stated that the ramp

had been poorly designed and had "physical defects." Construing his statements in a light most favorable to Dynowski, Vovk indicated the defects rendered it unreasonably dangerous.

{¶ 52} R.C. 2744.02(B)(4) provides that a municipality is liable for injury "caused by the *negligence* of [its] employees and that occurs* * *on the grounds of, and is *due to physical defects* within or on the grounds of, buildings that are used in connection with a governmental function." (Emphasis added.)

{¶ 53} The evidence presented raised an issue of material fact concerning whether the ramp constituted a "defect" within the meaning of the statute. Mazzeo designed and built the ramp without any expert help, permitted it to deteriorate over the years, and was informed that the railroad ties he installed were causing patrons to slip and fall. These facts indicated an exception to Solon's immunity applied pursuant to R.C. 2744.02(B)(4). Cf. *Kratochvil v. Mayfield Bd. of Edn.*, Cuyahoga App. No. 81790, 2003-Ohio-1360, 2003 WL 1392605.

{¶ 54} Furthermore, the evidence presented raised an issue of fact concerning whether Solon had a defense, even in light of the exception, pursuant to R.C. 2744.03(A). *Perkins v. Norwood City Schools* (1999), 85 Ohio St.3d 191, 707 N.E.2d 868. Mazzeo's testimony showed that the trustees gave him a wide range of authority when it came to policy-making and planning decisions involving the golf course. R.C. 2744.03(A)(3).

{¶ 55} Mazzeo's testimony also indicated that, while he exercised his discretion when it came to acquiring and using "equipment, supplies, materials, personnel, facilities, and other resources" relating to the golf course, he ignored the fact that a potential problem existed, despite being informed by patrons that the railroad ties were becoming hazardous. His admissions might be considered by a jury to be evidence of recklessness within the meaning of R.C. 2744.03(A)(5).

{¶ 56} Based upon the record, therefore, I would find that the trial court correctly denied Solon's motion and would overrule Solon's first assignment of error.

{¶ 57} Furthermore, I would not address Solon's second assignment of error. This court has jurisdiction only to determine appeals brought by a municipality pursuant to R.C. Chapter 2744. Since Solon's second assignment of error presents an issue of common-law negligence, this court has no jurisdiction to consider it. R.C. 2505.02.

{¶ 58} I would, accordingly, affirm the trial court's order.