Matthias, J.
 

 The demurrer presents but a single question of law: Where the owner of a building retains control over a suite of offices therein, leased to a tenant, “for the purpose of repairing the same and the doing of daily janitor work,” is such owner liable to an employee of his tenant, who is injured as a result of falling plaster which has been “defectively placed and installed on the base of said ceiling”?
 

 The plaintiff argues that this case differs from the ordinary landlord and tenant case in that here the landlord of a large office .building has retained control over the various suites and private offices located therein, for the purpose of making repairs and the daily cleaning of these suites and offices.
 

 The question presented by the demurrer is not one of first impression. It was considered and decided in the early case of
 
 Burdick
 
 v.
 
 Cheadle,
 
 26 Ohio St., 393, 20 Am. Rep., 767. Cheadle was the owner of a brick building designed to be used for storerooms for the sale of dry goods and groceries. He leased to Hunt and Newcomer a room on the lower floor of the building, for the sale of dry goods and groceries, agreeing with them to complete certain cornices, shelving and fixtures, then in process of construction in the room, in a secure, safe, convenient and proper manner, and to keep the premises in good order.
 

 
 *617
 
 Burdick, the plaintiff in that case, while on the premises as a customer of one Mattison, who had sublet the premises, was injured when the cornices and shelving fell upon him. Cheadle had been notified prior to the accident that the shelves were loose, dangerous and unsafe, and had been requested to make repairs, but had refused and neglected to do so. Burdick sued to recover from both Cheadle and Mattison for his injuries, and to his petition Cheadle, the landlord, demurred, which demurrer was sustained by the lower court and that decision was affirmed by the Supreme Court. We quote from the opinion of Mcllvaine, J., the following pertinent language:
 

 “Nor can the plaintiff hold the lessor liable to him for the injuries sustained upon his contract of lease with the tenant in possession. In disposing of this question, we have regarded Mattison as standing in the shoes of the original lessees.
 

 “The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule. There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the lessee intends to put them. If they be unsafe or unfit, it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so. And if the landlord warrants their fitness, the covenant stands for the benefit of the lessee and not for the benefit of strangers to the contract. And so, if the lessor engages with the lessee, to keep the premises in repair, a breach of the engagement gives a right of action only tó the lessee.
 
 *618
 
 But whatever may be the rights and duties respectively of landlord and tenant, as between themselves, the latter can not, by the terms of the lease, be discharged from the duty to his guests, and in a greater degree to his customers, of caring for their safety. And while such persons may reasonably expect the exercise of care for their safety from the person who invites them, they have no right to expect like care from his landlord, with whom they are not in privity. Hence, it is well stated by Shearman and Redfield, in their work on Negligence (Section 503), that the guests or customers of the tenant must seek redress for injuries, caused by defects in the premises, from the tenant and not from the landlord, even though the defects existed when the lease was made; for if they had not entered •the premises at the request of the tenant, or under his license, they would not have suffered injury.”
 

 The rule announced in
 
 Burclick
 
 v.
 
 Gheadle
 
 has been repeatedly followed and applied in this court. See
 
 Margua
 
 v.
 
 Martin,
 
 109 Ohio St., 56, 141 N. E., 654, and cases cited therein; also
 
 Goodall
 
 v.
 
 Deters,
 
 121 Ohio St., 432, 169 N. E., 443. A very similar question was before this court in the case of
 
 Berkowitz
 
 v.
 
 Winston, 128
 
 Ohio St;, 611, 193 N. E., 343, which involved residential property. The person injured therein was an employee of the tenant. In that case, also, the owner had agreed to make repairs and his failure to do so was alleged to have been the cause of the injuries. This court unanimously held as follows:
 

 “1. Promise by the lessor, to make repairs of premises leased, does not impose upon the lessor liability in tort to persons entering thereon at the invitation of the lessee.
 

 ■
 
 “2.
 
 Liability in tort is an incident to occupation or control; occupation and control are not reserved by an agreement to make repairs.
 

 
 *619
 
 “3. An owner of real estate, who has surrendered possession thereof to a lessee, is not liable to an employee of such lessee for personal injuries resulting from a defective condition of the premises, though he had promised the lessee to make repairs.”
 

 The plaintiff in the instant case alleges in his petition that his employer is a lessee of the defendant. He argues, however, that his employer, though a lessee, does not have full possession and control of the suite leased and occupied by him. Having pleaded that the Beck Insurance and Real Estate Agency is lessee, with the incidental interest in the land of the owner that accompanies this relationship, this court cannot disregard the allegation and treat the tenant as a licensee. The difference between these relationships is well stated in 1 McAdam on Landlord and Tenant (5 Ed.), 232, Section 64, as follows:
 

 “A
 
 lease is a contract for the possession and profit of land by the lessee and in recompense of rent or increase to the lessor, and is a grant of an estate in the land. A license on the other hand is an authority to do some act or series of acts on the land of another without passing any interest in the land.”
 

 The further question is presented whether a modification of the rule applied in the cases previously considered and decided by this court is required by reason of the fact that the building involved in this case was an office building, in a leased portion of which the employer of the plaintiff transacted business and to which the public was invited.
 

 It is contended that full control of such building, including the suite leased by the plaintiff’s employer, is retained by the owner, it having reserved the right to clean and repair the premises, and that the tenants thereof have no control over the same and therefore are in the same relationship as guests in a hotel. In
 
 *620
 
 our opinion the rule long established and frequently applied governs in this case. The employer of the plaintiff was a tenant, a lessee, and not a mere licensee in the building. The office occupied by him was a “private office room” and the plaintiff cannot recover in the 'absence of a showing that the lessor had a right of control to the exclusion of any control by the tenant if the former elected to exercise such right. In this respect the same rule of liability applies and with equal force to residential and business properties.
 

 Adherence to the rule heretofore adopted and applied requires affirmance of the judgment of the Court of Appeals. Such rule is supported by courts of last resort in many jurisdictions. Numerous pertinent cases are cited in the annotations in 8 A. L. R., 760, and 68 A. L. R., 1194. There are distinctions and some decisions announcing divergent views, but the holding of this court in previous cases to which we adhere is therein recognized and supported as the majority rule.
 

 Judgment affirmed.
 

 Weygandt, C. J., Hart, Zimmerman, Williams and Turner, JJ., concur.
 

 Bell, J., dissents.