JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, Joyce A. Edmond ("mother"), Andrea Edmond ("Andrea"), and Allison Edmond ("Allison") (collectively referred to as "plaintiffs"), were tenants in the second floor unit of property located at 6005 Engle Avenue in Cleveland, Ohio, which was owned by defendants-appellees, Joseph and Claire Bazzichi ("defendants" or the "premises"). In March 2001, a fire started on the first floor of the premises. Plaintiffs maintain that defendants' alleged failure to install smoke detectors in the first floor unit proximately caused them injury. Plaintiffs appeal from the judgment of the trial court that granted defendants' motion for summary judgment. For the reasons that follow, we reverse and remand.
 {¶ 2} Plaintiffs assign the following sole assignment of error for our review:
 {¶ 3} "I. The trial court abused its discretion and erred as a matter of law in granting appellees' motion for summary judgment."
 {¶ 4} The party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial.Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 1992-Ohio-95.
 {¶ 5} This Court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704. Pursuant to Civ.R. 56(C), "the reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. The motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50;Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741.
 {¶ 6} In accordance with the standard of review, we will construe the facts in a light most favorable to plaintiffs.
 {¶ 7} The three plaintiffs lived in the upstairs unit. A family with children lived in the downstairs unit. The upstairs unit had one means of egress through the side door in the kitchen to a staircase.
 {¶ 8} It is undisputed that there were working smoke detectors in the upstairs unit and in the staircase by the basement. The evidence is conflicting as to whether there were any smoke detectors in the first floor unit. Defendants' expert did not receive or test any smoke detectors from the first floor unit.
 {¶ 9} A fire started in the first floor unit in the early morning hours of March 16, 2001. One of the downstairs tenants alerted plaintiffs of the fire by knocking on the kitchen door entry to the unit and yelling "fire." Allison heard a noise at the kitchen door. Mother answered the door; Allison went into the kitchen where her mother told her the house was on fire. Andrea arrived in the kitchen a couple seconds later. Because the house was filling with smoke, mother closed the door.
 {¶ 10} Due to the smoke, the three ladies left the kitchen and headed for the porch.[1] Mother took and deployed the emergency ladder from the porch. Both Andrea and Allison knew their mother had the ladder and intended to use that as their means of exiting the unit.
 {¶ 11} Allison panicked when she saw flames on the porch and decided to jump. Likewise, when Andrea saw flames on the porch, she "dove" out of the living room window. Andrea heard a smoke detector going off as she was attempting to exit. Mother was the last to jump. She testified that she did not attempt to climb down the emergency ladder because it had become too hot.
 {¶ 12} After the fire, Joseph Bazzichi recovered two smoke detectors, one from the top of the basement stairs and the other from the second floor unit. He kept them for a year before giving them to his attorney who, in turn, had them examined by an expert witness for trial. The expert concluded that both smoke detectors were functional at the time of the fire. He further opined that because plaintiffs had time to secure and deploy the emergency ladder, the absence or functionality of smoke detectors on the premises was not the proximate cause of plaintiffs' injuries. Instead, the injuries were, in his opinion, the result of a lack of focus and immediate action by the plaintiffs after being alerted of the fire by a knock on the door.
 {¶ 13} R.C. 5321.04 requires landlords to, among other things, "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety * * *." Cleveland city ordinances require the installation of smoke detectors and provide in relevant part: "Owners of each * * * existing dwelling unit shall install a minimum of one (1) smoke detector adjacent to the sleeping area in each dwelling unit. At least one additional smoke detector shall be installed on each additional story of the dwelling including the basement * * *." (Cleveland Ordinance 392.02(A)).
 {¶ 14} Where a landlord violates a statute setting forth specific duties, it constitutes negligence per se; however, "the plaintiff must also establish that the injuries sustained were proximately caused by the defendant's negligence." Steele v.McNatt (1995), 102 Ohio App.3d 558 at 562, citing Shroades v.Rental Homes (1981), 68 Ohio St.2d 20 and Anderson v. Ceccardi
(1983), 6 Ohio St.3d 110, 114-115.
 {¶ 15} Defendants' expert notably does not discuss the presence or absence of a first floor unit smoke detector and none were removed from that unit following the fire. Plaintiffs testified that there was no first floor unit smoke detector. Under the relevant standard, we must accept the evidence that there was no smoke detector in the first floor unit. Accordingly, for purposes of summary judgment, plaintiffs set forth sufficient evidence to establish a statutory violation that constituted negligence per se. As for the issue of proximate cause, defendants' expert makes a subjective factual determination that smoke detectors in general played no role in the tenants' decisions to jump from the second floor. Conversely, plaintiffs argue that absence of a functioning first floor smoke detector caused their injuries by delaying their notice of the fire and limited the time they would have otherwise had to safely exit the premises.
 {¶ 16} The record reflects that the fire started in the first floor unit. When plaintiffs opened the door, smoke began filling the unit so they headed towards the porch unaware that the fire had originated in the front of the building. The second floor unit smoke detectors did not go off until flames had already reached the upstairs porch and smoke had inundated the unit. By that time, plaintiffs were panicking as they struggled through the smoke with one of them being visually impaired. The metal ladder failed as a viable means of escape when the flames on the porch caused it to be too hot.
 {¶ 17} From this record, it is reasonable to conclude that a first floor smoke detector, if present and operable, would have alerted plaintiffs of the fire much sooner. From that, a jury could reasonably conclude that plaintiffs would have made a safe exit had an operable smoke detector been present on the first floor. Although plaintiffs did not produce expert testimony in this regard, that is not required where the action "involv[es] conduct within the common knowledge and experience of jurors."Berdyck v. Shinde (1993), 66 Ohio St.3d 573. The issue of proximate cause (i.e., whether the presence of a smoke detector on the first floor would have played a role in plaintiffs' escape and/or avoided their injuries) is a question to be resolved by the jury. Accordingly, plaintiffs' sole assignment of error is sustained and this matter is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
It is ordered that appellants recover of appellees their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., and Blackmon, J., concur.
[1] Allison, who has vision problems, was led by her mother to the porch.