SABITOV et al., Appellants,

v.

GRAINES et al., Appellees.

[Cite as *Sabitov v. Graines,* 177 Ohio App.3d 451, 2008-Ohio-3795.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90015.

Decided July 31, 2008.

Raslan, El–Kamhawy & Pla, L.L.C., Jorge Luis Pla, and Alek El–Kamhawy, for appellants.

Rawlin Gravens Co., L.P.A., Terrance P. Gravens, and Ryan N. Clark, for appellees Stuart J. Graines and GMS Management Co., Inc.

Mazanec, Raskin, Ryder & Keller Co., John T. McLandrich, Thomas S. Mazanec, and Frank H. Scialdone, for appellees Lev Rakhmanov and Tatyana Rakhmanov.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., David W. Mellott, and Gregory J. Lucht, for appellee 2720 Van Aken Blvd., L.L.C.

Cowden, Humphrey, Nagorney & Lovett Co., L.P.A., and James A. Sennett, for Nationwide Mutual Insurance Company.

Richard H. Drucker, for Lazar Rakhmanov, Luba Rakhmanov, and Rayf Korolev.

SEAN C. GALLAGHER, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Edouard Sabitov (individually and as administrator of the estate of Elena V. Sabitova, deceased) et al. ("plaintiffs"), assert various causes of action against defendants-appellees for the death of Elena Sabitova ("Elena"). Elena sustained fatal injuries after falling through a trapdoor, measuring approximately two feet by four feet, in the floor of a deli located in a shopping center.

{¶ 2} There is no dispute by any party in this case that the trapdoor/ladder contraption where Elena fell violated the codified ordinances of the city of Cleveland.[1] Elena, a 37–year–old mother, died as a consequence of this hazard. Indeed, after her fatality occurred, the city of Cleveland issued 2720 Van Aken Blvd., L.L.C. ("Van Aken") a notice of violation of the city's ordinances relating to "installed access door in the 1st floor, with a ladder, for basement access-no permit-lease hazardous use." [2]

{¶ 3} The trial court ultimately dismissed plaintiffs' claims against each of the defendants-appellees that are involved in this appeal, including the tenants in possession of the premises at the time, along with various landlords connected to the premises where the trapdoor and stair ladder were installed and located.

{¶ 4} The present appeal disputes who, if any, of the defendants-appellees were entitled to be dismissed from this case and absolved of any liability for Elena's death as a matter of law.

{¶ 5} Plaintiffs appeal from the decisions that (1) granted summary judgment in favor of Lev Rakhmanov ("Lev") and Tatyana Rakhmanov ("Tatyana") on count ten of the complaint and judgment on the pleadings on count nine of the complaint, (2) entered judgment in favor of Stuart J. Graines ("Graines") and Van Aken on count 14 of the complaint, and (3) the order that granted summary judgment in favor of GMS Management Company, Inc. ("GMS") on counts seven and eight of the complaint. Plaintiffs further challenge the trial court's decision that granted a protective order to Graines and GMS.

---

1. E.g., affidavit of Brian T. Hengle, registered professional engineer; see also deposition of Richard Kraly, architect, agreeing with the analysis and evaluation of Hengle concerning "the codes as they applied to the trapdoor and the stairway" and conceding that the trapdoor and stair ladder are in violation of not only the City of Cleveland Building Code, but also the Ohio Basic Building Code and federal law being governed by OSHA. The city of Cleveland's representative testified that "[t]he City's position had been and remains so, is that (the unprotected opening of eight to 10 feet * * * in the means of egress is) a serious hazard that needs to be abated."

2. Another notice of violation was issued to Van Aken in 2004 for "illegal opening to basement (trapdoor opens to a basement; and is located near a first floor toilet facility creates a serious hazard. Stop use immediately. Door installed without permits. * * *.)"

{¶ 6} For the reasons that follow, we reverse the trial court's orders that entered judgment and dismissed counts nine and ten of the complaint, we vacate the protective order granted to GMS and affirm the protective order granted to Graines in part and vacate it in part, we affirm the dismissal of counts seven and eight of the complaint, and we affirm the dismissal of count 14 of the complaint.

## Procedural History

{¶ 7} According to the complaint, plaintiffs had previously filed an action on December 19, 2001, against Sabra Deli and Catering, Inc. and an amended complaint on February 26, 2003, adding GMS, Lev, Tatyana, Lazar Rakhmanov, Luba Rakhmanov, and Rayf Korolev as party defendants. Plaintiffs dismissed the original lawsuit on November 12, 2003.

{¶ 8} On April 5, 2004, plaintiffs refiled the action and included claims against Graines and Van Aken.

{¶ 9} The trial court entered various orders that dismissed plaintiffs' claims against defendants-appellees. Our examination of the record is limited to the facts relevant to those claims that are the subject of this appeal.

{¶ 10} Plaintiffs assert five assignments of error for our review. Relevant facts will be set forth in connection with the assignments of error to which they pertain and will be construed as required by the applicable standard of review.

{¶ 11} "I. Evidence and reasonable inferences present a question of fact as to whether the trapdoor and stair-ladder at issue are an 'open and obvious' hazard. Therefore, the trial court erred in granting summary judgment in favor of Lev Rakhmanov and Tatyana Rakhmanov on count ten of plaintiffs' complaint."

{¶ 12} This court reviews a trial court's grant of summary judgment de novo. *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.*, 99 Ohio St.3d 299, 2003-Ohio-3652, 791 N.E.2d 456, ¶ 6, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 13} In order to defeat a motion for summary judgment on a negligence claim, a plaintiff must establish that a genuine issue of material fact remains as to whether (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused

the plaintiff's injury. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271. Whether a duty exists is a question of law for the court to determine. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

{¶ 14} We note that the trial court initially denied the motion for summary judgment filed by Lev and Tatyana on the negligence claim set forth in count ten of plaintiffs' complaint. The court originally ruled that "viewing the evidence most favorably to plaintiffs, reasonable minds cannot come to the conclusion that the trapdoor was an open and obvious danger. Therefore, genuine issues of material fact remain to be litigated. This court's ruling is based on the following evidence: (1) Firefighter Barnoski's deposition testimony that none of the witnesses to the decedent's fall warned the decedent not to go down the stairs and his testimony that there were other witnesses to the fall besides defendant Lev Rakhmanov; (2) Affidavit of Brian Hengle, an engineer, stating that the installation of the trapdoor and ladder is a hidden danger and a person cannot take notice of the trapdoor and ladder before encountering it; (3) defendant Lev Rakhmanov's inconsistent statements to Firefighter Barnoski and Edouard Sabitov regarding how the trap door had been left open." Lev and Tatyana filed a motion to reconsider this ruling about eight months later, which the court granted.

{¶ 15} A de novo review of the record reveals that the trial court's first ruling was the correct one. There are genuine issues of material fact that preclude summary judgment in Lev and Tatyana's favor on count ten.

{¶ 16} In this case, the evidence establishes that Lev and Tatyana entered into a 55-page lease agreement with GMS on June 18, 1999, for the premises identified as 2776B in the Shaker Moreland Shopping Center. There is no dispute that they were in possession of the premises or that decedent was their business invitee on the date and time she fell on the premises. Business owners owe their invitees a duty of ordinary care by maintaining the premises in a reasonably safe condition so that their invitees are not unnecessarily and unreasonably exposed to danger. See *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 204, 18 OBR 267, 480 N.E.2d 474. However, a business owner is not an insurer of an invitee's safety and is under no duty to protect a business invitee from dangers that "are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." Id., citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus.

{¶ 17} Lev and Tatyana continue to argue that the hazardous nature of the trapdoor/ladder contraption in the floor nearby the toilet facility of their deli was "open and obvious" as a matter of law.

{¶ 18} The open-and-obvious doctrine states that a premises owner owes no duty to persons entering those premises regarding dangers that are open and obvious. *Armstrong v. Best Buy*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589. When the open-and-obvious doctrine is applicable, it obviates the duty to warn and acts as a complete bar to recovery. *Armstrong*, 99 Ohio St.3d at 80, 788 N.E.2d 1088. "The determination of the existence and obviousness of a danger alleged to exist on a premises requires a review of the facts of the particular case." *Miller v. Beer Barrel Saloon* (May 24, 1991), Ottawa App. No. 90–OT–050, 1991 WL 87098. Plaintiffs argue that there is a genuine issue of material fact as to whether the trapdoor in the floor with the attached ladder can be characterized as an open-and-obvious danger and that that issue should be submitted to a jury.

{¶ 19} Although the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to decide, the issue of whether a hazardous condition is open and obvious may present a genuine issue of material fact for the jury to review. *Klauss v. Marc Glassman, Inc.*, Cuyahoga App. No. 84799, 2005-Ohio-1306, 2005 WL 678984; see also *Louderback v. McDonald's Restaurant*, Scioto App. No. 04CA2981, 2005-Ohio-3926, 2005 WL 1802852 (holding that it was for a jury to decide whether the wet floor was an open-and-obvious condition when plaintiff did not notice the wet floor because his eyes were adjusting from the brightness of the sun, the floor was wet immediately upon entry, and there was no warning sign that the floor was wet).

{¶ 20} In *Green v. China House* (1997), 123 Ohio App.3d 208, 211, 703 N.E.2d 872, the Fifth Appellate District stated:

The determination of whether a hazard is latent or obvious depends upon the particular circumstances surrounding the hazard. In a given situation, factors may include lighting conditions, weather, time of day, traffic patterns, or activities engaged in at the time.

In all our daily activities, we concentrate varying degrees of attention on different tasks. A person walking across an icy street in winter must concentrate more attention on conditions underfoot than on the same street on a bright summer day. Under any given set of circumstances, how much attention a reasonably prudent person should direct to his or her surroundings is an extremely fact-specific analysis. For this reason, courts should hesitate to grant summary judgments in this sort of case, but instead, should submit them to a jury for determination.

{¶ 21} There is abundant evidence in the record to create an issue of fact as to whether the dangerous condition of the trapdoor in the floor was an open-and-obvious danger. The evidence includes, but is not limited to, the following:

inconsistent statements made by or attributed to Lev as to how Elena fell and whether she was warned of the open trapdoor; [3] the affidavit of Brian T. Hengle, P.E., a registered professional engineer who opined that the trapdoor is a hidden hazard and "not visible as a person walks through the corridor towards the toilet facility"; the affidavit of Richard E. Harkness, Ph.D, P.E., a registered professional engineer who opined that if Elena had "attempted to descend the ladder it is highly unlikely that she would have recognized the hazard" of the ladder because it failed to comply with safety requirements for fixed ladders; and the affidavit of Chandler A. Phillips,[4] who opined, among other things, that Elena's injury pattern indicated that she did not fall while descending the ladder and further opined that "she would not have sustained her pattern of injuries if she had been aware of an open trap door."

■ {¶ 22} The record also contains photographs of the open trapdoor, photographs that a reasonable trier of fact could conclude depict an unexpected hazardous condition to anyone who had exited that bathroom facility without having been made aware of the trapdoor's presence. Although Lev claimed during his deposition that he had warned Elena about the open trapdoor, this claim alone is insufficient to overcome the conflicting evidence in the record and is a matter of credibility properly left to the trier of fact, especially when Lev made this statement (which serves to further his defense) after he was sued and it contradicts other statements that were made contemporaneous to the accident. Further, there is no dispute that various ordinances and administrative rules were violated, all of which are admissible evidence of negligence. E.g., *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198.

{¶ 23} Defendants' motion for summary judgment on the negligence claim set forth in count ten of plaintiffs' complaint relied solely on Lev's deposition testimony that he warned Elena of the trapdoor and their belief that its dangerous condition was open and obvious as a matter of law. Because of the conflicts in the evidence and the requirement to construe the evidence in a light most favorable to plaintiff, the trial court erred by granting defendants' motion for summary judgment on this negligence claim.

{¶ 24} Assignment of error I is sustained accordingly.

{¶ 25} "II. Evidence and its reasonable inferences presented would lead a reasonable person to conclude Title XIII—Building Codes—Codified Ordinances

---

**3.** Lev's inconsistent statements are reflected in his deposition and the depositions of Edouard Sabitov and Andrew Barnoski.

**4.** Phillips is a licensed physician and registered professional engineer who concentrates his practice on medical evaluation of patients for purposes of biomechanical injury analysis.

of the City of Cleveland is a collection of local codified ordinances, not an administrative code. Therefore, the trial court erred in granting judgment on the pleadings on count nine of plaintiffs' complaint in favor of Lev Rakhmanov and Tatyana Rakhmanov."

{¶ 26} " 'Appellate review of a motion for judgment on the pleadings is de novo.' " *Graf v. Cirino*, Cuyahoga App. No. 90314, 2008-Ohio-3542, 2008 WL 2764868, ¶ 14, quoting *Chromik v. Kaiser Permanente*, Cuyahoga App. No. 89088, 2007-Ohio-5856, 2007 WL 3203111, ¶ 6. "In applying the Civ.R. 12(C) standard, judgment on the pleadings may be granted where no material factual issue exists and the moving party is entitled to judgment as a matter of law. * * * The determination is restricted solely to the allegations of the pleadings and the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in her favor as true." *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592–593, 635 N.E.2d 26.

{¶ 27} Count nine of plaintiff's complaint alleged negligence per se against defendants Lev and Tatyana for maintaining the trapdoor and stair ladder in violation of the codified city ordinances and the Ohio Building Code ("OBC"). While the OBC, of itself an administrative enactment, cannot serve as the basis of a negligence per se claim, a violation of a legislatively enacted ordinance may.

{¶ 28} Although negligence "must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence," a cause of action asserting negligence per se is "a violation of a specific requirement of law *or ordinance*, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required." (Emphasis added.) *Chambers*, 82 Ohio St.3d at 565, 697 N.E.2d 198, quoting *Swoboda v. Brown* (1935), 129 Ohio St. 512, 522, 2 O.O. 516, 196 N.E. 274. If "a positive and definite standard of care has been established by legislative enactment whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se." Id. "Negligence per se is tantamount to strict liability for purposes of proving that a defendant breached a duty." Id. Plaintiff must still, however, prove proximate cause and damages. *Pond v. Leslein* (1995), 72 Ohio St.3d 50, 53, 647 N.E.2d 477.

{¶ 29} In the complaint, plaintiffs specifically allege that defendants Lev and Tatyana violated sections 3135.08 through 3135.25 of the city's building code, which is contained and made a part of the city of Cleveland's codified ordinances and was enacted through legislation. Chapter 3101 of the Ordinances of the City of Cleveland sets forth the scope, definitions, and standards, and notes: "The

legislative history of this chapter, except where specifically noted at the end of a section, is as follows: Ordinance No. 1116–A–85, passed February 10, 1986."

{¶ 30} The pleadings aver that defendants "did not comply" with city ordinances that require "one to construct an interior stairway as a means of egress between floors of a commercial or retail structure." Defendants do not deny that the trapdoor and stair ladder in the premises under their control violated the city ordinances. Primarily, defendants maintain that they should not be liable for it because the city issued them a certificate of occupancy. It is not clear from this record what the certificate of occupancy entails or to what extent it should or could insulate those who maintain hazardous conditions on their premises from claims of invitees injured by those conditions.[5] Notwithstanding, this is a matter outside the pleadings and, therefore, is not an appropriate basis for supporting a judgment on the pleadings for this claim. A court cannot look beyond the face of the complaint when ruling on a motion for judgment on the pleadings under Civ.R. 12(C). See *Park v. Acierno*, 160 Ohio App.3d 117, 123, 2005-Ohio-1332, 826 N.E.2d 324; *Ferchill v. Beach Cliff Bd. of Trustees*, 162 Ohio App.3d 144, 149, 2005-Ohio-3475, 832 N.E.2d 1238.

{¶ 31} Alternatively, defendants contend that the Ohio Supreme Court precedent of *Chambers* bars this claim. In *Chambers*, 82 Ohio St.3d 563, 697 N.E.2d 198, the Ohio Supreme Court was asked to extend the doctrine of negligence per se to violations of the OBC, which constitute administrative rules. The court declined to do so, finding an important policy distinction between legislative enactments and administrative rules for purposes of applying the doctrine of negligence per se. Essentially, legislators have authority and accountability to dictate public policy that administrative agencies lack. Therefore, the Ohio Supreme Court has held that administrative agencies cannot be bestowed with the power or ability to enact rules that would alter the proof requirements between litigants.

{¶ 32} In *Chambers*, the court held that a violation of the OBC is not negligence per se because the Board of Building Standards, an administrative

---

5. Defendants did not submit a certificate of occupancy with their motion for judgment on the pleadings, their motion for summary judgment, or their motion for reconsideration. The city representative was not aware of a certificate of occupancy and stated that "there is no need to have a new certificate of occupancy, if you're doing work restaurant to restaurant, if you're doing an insignificant amount of work." He further stated that "whoever's in charge of that facility has the duty to remedy that serious hazard [referring to the trapdoor stair ladder] * * * The responsible parties have the duty at all times to maintain their properties in a code compliant condition.* * * The City ordinances are public documents, and a business owner should know what the ordinances are that regulate their business." The director also stated that if a lessee is aware that there have been no changes to the structure since the issuance of the certificate of occupancy, then the lessee could assume that everything was "as it should be."

agency whose members are appointed by the governor, promulgated the OBC. *Chambers* continues to recognize negligence per se for violations of specific laws and ordinances, as does this court. E.g., *Edmond v. Bazzichi,* Cuyahoga App. No. 86741, 2006-Ohio-2588, 2006 WL 1431049; *Dawson v. Cleveland Hts.,* Cuyahoga App. No. 81414, 2003-Ohio-179, 2003 WL 132444; *Zaslov v. May Dept. Stores Co.* (Oct. 1, 1998), Cuyahoga App. No. 74030, 1998 WL 686266.[6] Unlike the OBC, the city ordinances are legislation and were not enacted by an administrative agency.

{¶ 33} To the extent that count nine asserts negligence per se for violations of the OBC, judgment on the pleadings was proper. However, plaintiffs' negligence per se claims based upon violations of city ordinances that were enacted through legislation should not have been dismissed on a motion for judgment on the pleadings.

{¶ 34} Accordingly, assignment of error II is overruled in part and sustained in part; the trial court's decision granting judgment on the pleadings on count nine is reversed with respect to the alleged violations of city ordinances.

{¶ 35} "III. The trial court erred and abused its discretion when it granted Stuart J. Graines' and GMS Management Company, Inc.'s joint motion for protective order, thus precluding Edouard Sabitov from investigating evidence on issues of material fact."

{¶ 36} On September 28, 2004, defendant Graines filed a motion for a protective order as to discovery requests directed to him as a party. Simultaneously, he filed a motion to dismiss on the basis of the statute of limitations. In his motion, Graines sought a protective order, claiming that "virtually all of these discovery requests are objectionable for the simple reason that they seek discovery of information which is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence in the underlying suit." Graines also asserted that the discovery was improper because of his belief that he was not a proper party. Graines sought a protective order from responding to interrogatories,[7] request for production of documents, and the notice of deposition to him. On January 12, 2005, the trial court granted Graines's motion for a protective order and erroneously granted a protective order to GMS, which did

---

6. *Kirchner v. Shooters on the Water, Inc.,* 167 Ohio App.3d 708, 2006-Ohio-3583, 856 N.E.2d 1026, concerns negligence per se claims based upon a violation of the OBC, not any specific city ordinance. In fact, the city had exempted Shooters from compliance with the OBC.

7. Whether the court erred by including the interrogatories within the purview of its protective order is rendered moot by the fact that Graines was properly dismissed from the lawsuit; therefore, this issue will not be addressed. Interrogatories may be served only upon parties. Civ.R. 33.

not move for one. Accordingly, the portion of the judgment granting a protective order to GMS was in error and is vacated.

{¶ 37} We further determine that the trial court erred by granting Graines a blanket protective order concerning all of the plaintiffs' discovery requests.

{¶ 38} Even if Graines is not a party, the Ohio Rules of Civil Procedure still permit discovery from him. Civ.R. 30 provides that "any party may take the testimony *of any person,* including a party, by deposition upon oral examination." Civ.R. 34(C) provides: "Subject to the scope of discovery provisions of Civ.R. 26(B) and 45(F), a person not a party to the action may be compelled to produce documents or tangible things or to submit to an inspection as provided in Civ.R. 45." In this case, it is clear that Graines was connected to the premises and may have relevant information concerning the location and creation of the hazard where Elena fell.

{¶ 39} While the parties refer to discovery and orders from the previously dismissed litigation, we are not privy to information that is not contained in this record. It is axiomatic that any information Graines or GMS produced previously could not serve as a basis for a protective order nor a motion to compel.

{¶ 40} Graines's sole objection in seeking the protective order is a generalized statement that all of the requested discovery is irrelevant; he asserted no other objection to the discovery.

{¶ 41} In *Tschantz v. Ferguson,*[8] this court held as follows:

{¶ 42} "Civ.R. 26(B)(1) grants broad discovery powers to parties. Although the rule limits the matter to be discovered to that which is 'relevant to the subject matter,' Civ.R. 26(B)(1) also provides for discovery of information 'reasonably calculated to lead to the discovery of admissible evidence.' The test for relevancy under Civ.R. 26(B)(1) 'is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.'"

{¶ 43} A review of the subject production requests reveals that most of them seek information probative of relevant facts at issue in this case and, therefore, a carte blanche protective order on the basis that the discovery is irrelevant was not appropriate. For example, document request numbers one through three and six relate specifically to this action, and request numbers five and seven could

---

8. (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507, quoting *Icenhower v. Icenhower* (Aug. 14, 1975), Franklin App. No. 75AP–93, 1975 WL 181668, at 2; see also *State ex rel. Fisher v. Rose Chevrolet* (1992), 82 Ohio App.3d 520, 523, 612 N.E.2d 782.

lead to the discovery of admissible evidence in this action. However, given our disposition of the claims against Graines, GMS, and Van Aken, the information sought in request numbers four and seven, which pertain to Graines's ownership interest in GMS and Van Aken, is not relevant.

{¶ 44} Plaintiffs are entitled under Civ.R. 26 and 30 to take the deposition of Graines, who may have information relevant to this case. Accordingly, assignment of error III is sustained, and the protective order is affirmed in part and reversed in part as stated.

{¶ 45} "IV. Evidence and reasonable inferences present a question of fact as to whether the trial court had sufficient evidence before it to make a just and proper decision. Therefore, the trial court erred in granting summary judgment in favor of GMS Management Company, Inc. on count seven and eight of plaintiffs' complaint."

{¶ 46} GMS maintains that the trial court properly granted it summary judgment for the reason that it was a commercial landlord out of possession and control of the premises at issue.

{¶ 47} In *Kirchner,* this court recognized the rule that "[a] commercial landlord who is out of possession and control of property leased to a tenant is not liable to third parties for injuries caused by conditions on the property." *Kirchner,* 167 Ohio App.3d 708, 2006-Ohio-3583, 856 N.E.2d 1026, ¶ 32, citing *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 1 OBR 230, 438 N.E.2d 1149; *Pitts v. Cincinnati Metro. Hous. Auth.* (1953), 160 Ohio St. 129, 51 O.O. 51, 113 N.E.2d 869; *Ogle v. Kelly* (1993), 90 Ohio App.3d 392, 396, 629 N.E.2d 495. "This common law rule has been abrogated with respect to residential property by the enactment of various landlord-tenant statutes, but the rule remains in place with respect to commercial leases." Id.

{¶ 48} In this case, no one seems to know who created the dangerous condition that led to Elena's death.[9] Evidence in the record does include that Stuart J. Graines, Trustee, in his capacity as a landlord, entered a lease agreement with Sohat Enterprises, Inc. concerning the premises in 1985. At that time, the terms of the lease included provisions for "work to be performed by the landlord" and which specifically included the following: "board up the existing stairway leading to the basement and replace said stairway with a new one, which shall be located at a point designated by Tenant, provided that said location does not present structural problem(s) for its installation. In the event that Landlord

---

9. The city could not find documents that authorized the installation of the trapdoor in the way it was shaped and installed. The city does not know who installed the trapdoor and stair ladder. The defendants/tenants claim the trapdoor was there when they took possession and they did not do anything to it.

and Tenant cannot agree as to the location of the new stairway, then the Landlord shall locate said stairway at the location selected by Landlord." At the least, this evidence would suggest that the condition existed at the time GMS leased the premises to Lev and Tatyana. Nonetheless, it appears from the evidence in this record that the rule would still pertain even if GMS or some other lessor knew of or created the hazardous condition. The Ohio Supreme Court's reasoning in *Hendrix* lends support to this conclusion:

> [W]e are not persuaded that the allegations regarding the lessor's knowledge of defects, even if established, would amount to special circumstances * * * in the context of a commercial lease. In a commercial setting, the lessee is in a position to bargain with the lessor over the division of repair responsibilities, and the terms in a commercial lease are left to the parties to negotiate between themselves. Thus, the relationship between the commercial lessor and lessee is not regulated by any statutory regulations, such as the Landlords and Tenants Act; rather, the common law maxim caveat emptor applies, and "the tenant takes them [the premises] as he finds them with all existing defects of which he knows or can ascertain by reasonable inspection."

*Hendrix*, 1 Ohio St.3d at 208, 1 OBR 230, 438 N.E.2d 1149, quoting *Ripple v. Mahoning Natl. Bank* (1944), 143 Ohio St. 614, 621, 28 O.O. 508, 56 N.E.2d 289.

{¶ 49} The court also observed that "[t]he finding that the lessor was out of possession and control has been held to relieve the landlord from liability for damages resulting from the condition of the premises even in cases where the landlord agreed to make repairs." Id. at 207, 1 OBR 230, 438 N.E.2d 1149.

{¶ 50} In this case, GMS did not retain the right to admit or exclude others from the premises. Lev testified that GMS did not have keys to the premises. Under the terms of the lease, the defendants/tenants assumed the premises in an "as is" condition and assumed the obligation to comply with "all present and future laws, ordinances, orders, rules, regulations, and requirements of all federal, state, municipal and local governmental, departments, commissions, boards, and officers * * *." Therefore, the trial court did not err in granting GMS's motion for summary judgment.[10]

{¶ 51} Assignment of error IV is overruled.

{¶ 52} "V. Evidence and reasonable inferences present a question of fact as to whether the trial court had sufficient evidence before it to make a just and proper decision. Therefore, the trial court erred in granting summary judgment in favor of Stuart J. Graines and 2720 Van Aken Boulevard, LLC on count fourteen of plaintiffs' complaint."

---

**10.** Because the issue is not before us, we take no position on any claim the tenants may have against the landlord.

{¶ 53} The statute of limitations bars wrongful-death claims against Graines. R.C. 2305.10 and 2125.02. In count 14 of the complaint, plaintiff alleges that Graines conveyed title of the Shaker Moreland Shopping Center to Van Aken "in order to avoid liability for the construction of the trap door and ladder." Elsewhere throughout the complaint, plaintiff refers to Graines as the owner and landlord of the premises where Elena fell. As set forth above, the law generally precludes a negligence action against a commercial landlord out of possession as discussed under assignment of error IV. Without a predicate for liability to plaintiffs, the fraudulent conveyance claim against Graines and Van Aken must fail. In order to state a cognizable action for fraudulent conveyance, plaintiffs must be creditors or potential creditors of the defendants.

{¶ 54} R.C. 1336.04(A) provides:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

{¶ 55} Since plaintiffs have no viable claim pending against Graines or Van Aken, they are not creditors or even potential creditors. Therefore, plaintiffs lack standing to contest the suspicious nature of the ownership transfer the day after Elena's fatal accident.

{¶ 56} Assignment of error V is overruled.

Judgment affirmed in part
and vacated in part,
and cause remanded.

CALABRESE, J., concurs.

ROCCO, J., concurs in part and dissents in part.

KENNETH A. ROCCO, Judge, concurring in part and dissenting in part.

{¶ 57} I agree that summary judgment was properly granted in favor of GMS. I also agree that the judgment on the pleadings on plaintiffs' negligence per se claim was premature. However, I would affirm the summary judgment in the Rakhmanovs' favor on count ten of the complaint on the grounds that plaintiffs cannot show that these defendants' negligence was the proximate cause of the decedent's death.

{¶ 58} Plaintiffs have many theories as to how the various defendants breached various duties of care to the decedent. However, they cannot show that any of these alleged breaches of duty were the cause of the decedent's fall, because plaintiffs do not know how or why the decedent fell. Thus, even if there was a genuine issue of fact whether the defendants breached a duty of care to the decedent, they were still entitled to judgment as a matter of law, because plaintiffs cannot show that the negligence was the proximate cause of the decedent's death. Speculation is insufficient to prove proximate cause. *Salem v. Koval* (Dec. 9, 1999), Cuyahoga App. No. 75268, 1999 WL 1129586; *Allen v. CGS Invests., Inc.* (June 11, 1992), Cuyahoga App. No. 62947, 1992 WL 136497.