[Cite as *Esparza v. Klocker*, 2015-Ohio-110.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101604**

**JESSICA ESPARZA, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**THOMAS GERALD KLOCKER, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-798996

**BEFORE:** Jones, P.J., S. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

Lei Jiang
26943 Westwood Road
Westlake, Ohio 44145


**ATTORNEYS FOR APPELLEE**

**For Thomas G. Klocker, et al.**

Joseph A. Ferrante
2 Summit Park Drive
Suite 540
Independence, Ohio 44131

Matthew J. Cavanagh
Adam C. Smith
McDonald Hopkins, L.L.C.
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114

**For Nationwide Insurance Company**

Gregory E. O'Brien
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street, 29th Floor
Cleveland, Ohio 44114

LARRY A. JONES, SR., P.J.:

**{¶1}** Plaintiffs-appellants, Jessica Esparza and A Metal Source, appeal the trial court's granting of summary judgment in favor of defendants-appellees, Thomas Klocker and All Metal Sales. We reverse and remand.

## I. Procedural History and Facts

**{¶2}** This lawsuit involves an ongoing feud between Esparza and Klocker who became step-siblings when Klocker's father, Thomas, Sr., married Esparza's mother, Rocio. Thomas, Sr. founded Midwest Metals, a metal distributorship that both Klocker and Esparza were employed with before leaving to form their own companies. In 1999, Klocker started All Metal Sales, Inc. In 2009, Esparza founded All Metal Source, which she renamed A Metal Source approximately a year later. By all accounts, Klocker ran a multi-million dollar company, while Esparza's company remained small and she was the sole employee.

**{¶3}** The claims in the instant case arise out of a 2010 federal court case in which Klocker's business, All Metal Sales filed suit against Esparza's business, A Metal Source for trademark infringement alleging that A Metal Source caused confusion in the marketplace by employing a name and a logo that were deceptively similar to All Metal Sales. The matter proceeded to a jury trial, and the jury found in favor of Esparza's company, A Metal Source.

**{¶4}** Esparza filed the instant lawsuit in state court in June 2013. The case was initially removed to federal court but later remanded to state court. Esparza filed first and second amended complaints alleging seven causes of action. In August 2013, Nationwide Insurance, the insurer for Klocker's All Metal Sales, filed a third-party complaint and action for declaratory judgment.

**{¶5}** Esparza claimed that Klocker had longstanding animosity towards her and her family,

which was racially and ethnically motivated.[1]   She alleged that Klocker threatened and committed acts of violence towards her family on numerous occasions, including acts that were racially motivated.   Esparza claimed that Klocker's hatred of her family caused her to suffer extreme emotional distress.   In addition, Esparza claimed that Klocker set out to destroy her business by filing the federal lawsuit.   Esparza alleged that Klocker misappropriated information obtained during discovery in the 2010 federal case, such "as website strategies, sales and purchase reports, customer invoices, and other confidential information" to "maliciously interfere" with her business relationships and contracts and steal sales from her company.   She further alleged he tried to sabotage her company by employing various cybertactics that included "swamping" the internet with fake domain names designed to confuse her customers.

{¶6}   Specifically, in December 2013, Esparza received a notice from the yellow pages to continue a listing for a phone number for "All Metal Source, LLC," even though she had never purchased this listing in the yellow pages.   The notice was addressed to "All Metal Source, LLC" with her business address, but listed a phone number that did not, and had never, belonged to her company.   According to Esparza, when she called the phone number, a female voice answered and said, "Thank you for calling All Metal Sales."   During his deposition, Klocker denied that the phone number in question belonged to his company, stating that he had "never seen that number show up."

{¶7} In addition, in November or December 2013, Esparza discovered that in May 2013 someone had anonymously registered 28 domain names that infringed on A Metal Source's trademarks.   At the time, Esparza had reason to believe that Klocker had registered the domain names.   She subpoenaed the domain registrar, GoDaddy.com, and the private registration

---

[1] Esparza is African-Colombian, and Klocker is Caucasian.

company, Domains By Proxy, for the registrant's identity. GoDaddy.com and Domains By Proxy produced documents showing that Klocker and/or his agents had in fact registered the domain names. Esparza claimed that "[b]y registering so many infringing domain name URLs, Defendants were able to swamp Plaintiff Company's website, and confuse and mislead Plaintiffs' customers into thinking that Plaintiff Company went out of business."

{¶8} In January and February 2014, Esparza served two subpoenas upon AT&T for the identity of the registrant of three phone numbers she alleged Klocker was using to interfere with her business. On February 11, 2014, Klocker motioned the court for a protective order as to the AT&T phone records. The trial court granted the motion for a protective order.

{¶9} Despite the protective order, AT&T released a portion of the subpoenaed records to Esparza's attorney. On May 7, 2014, Esparza motioned the court for an in camera review of the phone records and for clarification of the protective order. The trial court did not rule on the motion.

{¶10} Klocker maintained that Esparza had no evidence that he interfered with her business contracts or relationships other than her baseless allegations. The trial court evidently agreed, because, on June 2, 2014, it granted Klocker's motion for summary judgment as to all counts.[2] The trial court granted Nationwide's motion for summary judgment in part and found it moot in part.

{¶11} Esparza filed a timely appeal, appealing the judgment in favor of Klocker on the following causes of action: intentional infliction of emotional distress, intentional interference

---

[2] Esparza had previously filed a motion to dismiss four of the seven counts.

with business relationships, and intentional interference with contracts.[3]

## II.  Assignments of Error

I. The trial court failed to consider all alleged wrongful conduct committed by Defendant Klocker and failed to consider all conduct together and in proper context. Therefore the trial court's dismissal of Plaintiff Esparza's intentional infliction of emotional distress must be reversed and remanded.

II. There are genuine issues of material fact regarding whether the Defendants contacted Plaintiffs' customers and whether they registered phone numbers in Plaintiffs' business name and address with intent to interfere with Plaintiffs' business relationships. Therefore, the trial court's dismissal of Plaintiffs' claim of intentional interference with business relationships must be reversed and remanded.

III. There are genuine issues of material fact regarding whether Defendants registered phone numbers in Plaintiffs' business name and address with intent to interfere with Plaintiffs' current and prospective contracts. Therefore, the trial court's dismissal of Plaintiffs' claim of intentional interference with business contracts must be reversed and remanded.

IV. The trial court abused its discretion in granting a blanket protective order to Defendants, barring Plaintiffs' access to critical phone records.

V. The trial court abused its discretion by refusing to conduct an in camera review, even after AT&T produced phone records in response to Plaintiffs' subpoena. These records would conclusively establish Plaintiffs' claims of intentional interference with business relations and intentional interference with business contracts.

{¶12} We will discuss the fourth and fifth assignments of error; the fourth assignment of error is dispositive of this appeal.

## III.  Law and Analysis

---

[3] A Metal Source also filed a second lawsuit in federal court against All Metal Sales alleging that Klocker registered internet domain names that incorporated her company name. In August 2014, the federal district court granted All Metal Sales's motion to dismiss based on the doctrine of res judicata because the state trial court had granted summary judgment in the instant case. *See A Metal Source, LLC v. All Metal Sales, Inc.*, N.D.Ohio No. 1:14-CV-1020, 2014 U.S. Dist. LEXIS 119606 (Aug. 26, 2014).

{¶13} In the fourth assignment of error, Esparza argues that the trial court abused its discretion in granting Klocker's motion for a protective order. For the reasons that follow, we agree.

{¶14} Civ.R. 26(B)(1) provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

{¶15} Discovery disputes are generally reviewed under an abuse of discretion standard. *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 151-152, 569 N.E.2d 875 (1991). But "[i]n determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result." *Arnold v. Am. Natl. Red Cross*, 93 Ohio App.3d 564, 576, 639 N.E.2d 484 (8th Dist.1994).

{¶16} The trial court held a case management conference on August 19, 2013, and established a timeline for the progression of the case, which included a discovery deadline of January 31, 2014.

{¶17} On December 10, 2013, the parties filed a joint motion for a proposed protective

order.   In the motion, the parties stated that they expected there to be privileged or private documents filed in the case and proposed these be marked "Confidential" and/or "Attorney Eyes Only"; the parties further proposed a method by which they would view and safeguard the documents and potential exhibits.   The trial court denied the motion on January 9, 2014, without explanation.

{¶18} On January 14, 2014, Esparza issued a subpoena to AT&T, requesting, in part, the following in relation to each of three specific phone numbers, which   included the phone number from the yellow pages ad:

(1) All phone records from January 2011 to present;

(2) Name of subscriber/holder from January 2012 (January 2013 for one of the phone numbers) to present;

(3) Addresses of subscriber/holder;

(4) Local and long distance telephone connection records from January 2010 to present (January 2013 to present for one of the telephone numbers);

(5) Length of service and types of service;

(6) Related telephone or instrument number or other subscriber number or identity associated with the accounts, including any temporarily assigned network address from January 2011 to present (January 2013 to present for one of the telephone numbers);

(7) Means and source of payment for all service (including any credit card or bank account number or routing number).

{¶19} On February 5, 2014, Klocker emailed Esparza, stating that he had no objection to (2), (3), (5), and (6) for each of the three phone numbers.   He objected, however, to the remainder and suggested that Esparza narrow her subpoena by providing the phone company with her customer's phone numbers and request information about those phone numbers only.   He also stated that he would be willing to "work with" Esparza to provide her with payment

information that did not expose him to identify theft.

{¶20} On February 10, 2014, Klocker moved for a protective order asking the court to prohibit the release of the subpoenaed phone records. Klocker argued that the parties had already conducted extensive discovery and the subpoenas were untimely and irrelevant to Esparza's claims. He claimed that he had tried to come to a resolution with Esparza's counsel on the matter, but she refused to work with him. He further argued that the records would be produced after the end of the discovery period and may contain confidential information.

{¶21} On February 14, 2014, Esparza issued a second subpoena to AT&T, requesting the same information for two additional phone numbers, which she claimed were falsely advertised as belonging to Klocker, Sr.'s company, Midwest Metals, but were being rerouted to Klocker's company.

{¶22} The trial court granted the motion for a protective order on March 10, 2014, but by that time, AT&T had already released some of the records. Esparza filed a motion for an in camera review of the records, requesting that her counsel be allowed to review those records AT&T had already released. She also sought clarification of the protective order since it appeared to be a "blanket" protective order over the entire subpoena, even though there were portions of the subpoena Klocker had not objected to. The trial court did not rule on the motion before granting summary judgment in favor of Klocker and All Metal Sales.

{¶23} This court has stated that "Civ.R. 26(B)(1) grants broad discovery powers to parties." *Sabitov v. Graines*, 177 Ohio App.3d 451, 2008-Ohio-3795, 894 N.E.2d 1310, ¶ 41-42 (8th Dist.), citing *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 715, 647 N.E.2d 507 (8th Dist.1994). The rule limits the matter to be discovered to that which is relevant to the subject matter, but also provides for discovery of information "reasonably calculated to lead to the

discovery of admissible evidence." *Sabitov* at *id.* Therefore, "the test for relevancy under Civ.R. 26(B)(1) is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence." *Id.*

{¶24} Klocker stated three main arguments for opposing the subpoena: (1) the records were irrelevant, (2) the records would be produced after the discovery period, and (3) the records may contain confidential information. Here, it is readily apparent that the information Esparza sought was relevant, if not indispensable, to proof of her claims. Esparza alleged that Klocker registered at least two phone numbers using her company's name and address but when a current or potential customer called one of the numbers, they were directed to Klocker's company, and/or Klocker used the phone numbers to contact Esparza's customers. Although Klocker proposed Esparza limit the subpoena and providing AT&T with specific phone numbers, we agree with Esparza that her subpoena should not be limited in this manner.

{¶25} In this increasingly mobile society, business is as likely to be conducted on a mobile device as a hardwired phone and there are numerous methods of communication by which an existing customer may have contacted Esparza, including a phone number that Esparza may not have listed in her customer database.

{¶26} By way of illustration, Esparza only has Customer A's business phone number in her customer database but Company A's president used a cell phone to place an order during the time period in question. Under Klocker's proposed "solution," AT&T's records would not show a call had been placed. Likewise, if, as Esparza has alleged, All Metal Sales used one of the phone numbers to contact her customers under the guise of A Metal Sales, and called Company A's president on her cell phone, the phone number would not be in the records Klocker proposed

to have produced.

{¶27} We also find no merit to Klocker's claim that Esparza should be prohibited from subpoenaing the AT&T records because they would have been produced after the discovery deadline, the parties had already taken depositions and completed extensive discovery, and Esparza was unable to show any evidence to support her claims for relief.

{¶28} The trial court set the January 31, 2014 discovery deadline in August 2013. Esparza testified that she did not find out about the phony phone numbers until December 2013 and the domain names until November or December 2013. She subpoenaed the phone records the next month; therefore, her subpoena was not untimely. Although the documents requested in the first subpoena may have been produced after the discovery deadline, they were requested before the deadline had passed.

{¶29} Finally, Klocker argues that the records could contain confidential financial information. While that may be true, the records were sent to counsel for Esparza, who, as an attorney, is presumed competent to handle sensitive information in a confidential manner. Moreover, the trial court had broad authority to fashion a protective order that protects the security of any sensitive information. Pursuant to the court's authority to regulate discovery, the court may limit who has access to the information, limit or prohibit the reproduction of documents, and designate who shall serve as custodian of the records. *See Alpha Benefits Agency v. King Ins. Agency*, 134 Ohio App.3d 673, 682, 731 N.E.2d 1209 (8th Dist.1999).

{¶30} The parties had already filed a joint proposed protective order that the trial court denied without explanation. Instead, the court issued a blanket protective order prohibiting Esparza's discovery of the subpoenaed material, even though Klocker had no objection to many of the subpoenaed records. To do so was an abuse of the trial court's discretion.

**{¶31}** "The purpose of the discovery rules * * * is to prevent surprise to either party at the trial or to avoid hampering either party in preparing its claim or defense for trial." *Alpha Benefits* at 683, citing *Jones v. Murphy*, 12 Ohio St.3d 84, 87, 465 N.E.2d 444 (1984). By ignoring Civ.R. 26(C), and refusing either to adopt the parties' joint proposed protective order or craft its own appropriate protective order, the trial court hampered Esparza's ability to fully pursue her claims.

**{¶32}** We do note, however, that the second subpoena was served upon AT&T on February 10, 2014, after the discovery deadline was passed and, Esparza admits, related to phone numbers purporting to belong to a third company, Midwest Metals, which is not related to the current litigation. Esparza also failed to move the court to extend the discovery deadline. Therefore, we do not find that the trial court erred in granting Klocker's motion for a protective order as to this subpoena.

**{¶33}** The fourth assignment of error is sustained.

**{¶34}** In the fifth assignment of error, Esparza argues that trial court erred in failing to conduct an in camera review of the produced AT&T records. We note, however, that Esparza's motion for an in camera review requested that Esparza's attorney, not the court, be allowed to conduct the in camera review. Klocker also did not claim that documents were privileged, therefore, the court may have felt an in camera review was unnecessary. Therefore, we do not find that the trial court abused its discretion in denying this motion. The fifth assignment of error is overruled.

**{¶35}** Based on our disposition of the fourth assignment of error, the first, second, and third assignments of error, which deal with the trial court's decision to grant summary judgment in favor of Klocker and All Metal Sales, are moot.

IV.   Conclusion and Remand Instructions

**{¶36}** The trial court erred in granting a blanket protective order and quashing the first subpoena upon AT&T, dated January 14, 2014.

**{¶37}** We do note, however, that only three out of seven of the original claims remain: intentional infliction of emotional distress, intentional interference with business relationships, and intentional interference with contracts.

**{¶38}** Judgment reversed, and case remanded for proceedings consistent with this opinion.


It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

LARRY A. JONES, SR., PRESIDING JUDGE

TIM McCORMACK, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS
WITH SEPARATE OPINION


SEAN C. GALLAGHER, J., DISSENTING:

**{¶39}** I respectfully dissent from the majority decision.   The trial court specifically ordered all discovery "to be completed by January 31, 2014."   The trial court's order went so far as to include the attorneys' signatures acknowledging that the scheduling order was received and

understood. Simply serving subpoenas by the deadline is insufficient to comply with that order without a request for additional time. The subpoenas in this case, although filed two weeks before the deadline, ordered compliance by February 14, 2014.

{¶40} As draconian as the result seems, the regulation of discovery is well within the province of the trial court. In fact, the majority recognizes this concept in determining that the subpoenas issued on February 14, 2014, were properly quashed in light of the failure to seek additional time to complete discovery. There is no difference between a party ordering the production of documents on February 14 and subpoenas being served on that date. In both instances, the discovery completion deadline was violated.

{¶41} The trial court did not abuse its decision by granting the protective order. Esparza failed to seek additional time to complete discovery and cannot unilaterally extend that deadline by filing a subpoena ordering compliance beyond the discovery cutoff. Accordingly, I dissent from the decision of the majority, and the remaining assignments of error should be addressed.